UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-8571-GW-AGRx | Date | January 6, 2022 |
|---|---|---|---|
| Title | *Cherie Diaz v. One Technologies, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ju-In D. Jung | Nicole N. King |
| | Witt W. Chang |
| | Ari N. Rothman |

**PROCEEDINGS:**     TELEPHONIC HEARING ON PLAINTIFF'S MOTION TO REMAND [17]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court DENIES Plaintiff's Motion.

Court and counsel confer re upcoming motion to dismiss. The parties will file a stipulation to continue the briefing schedule as soon as conveniently possible.

                                                                                                            :     18

                                                                 Initials of Preparer     JG

<u>*Cherie Diaz v. One Technologies LLC*</u>; Case No. 2:21-cv-08571-GW-(RAOx)
Tentative Ruling on Motion to Remand

I.   **Background**

Plaintiff Cherie Diaz sued Defendant One Technologies for violations of California Business and Professions Code §§ 17529.5(a)(2) and 17529.5(a)(3) arising from 54 unsolicited emails.  *See generally* Complaint ("Compl."), No Docket. 1-1.  Plaintiff seeks statutory damages of $1,000 per email, and "attorneys' fees as part of costs."  *Id.* at 6.

Plaintiff alleges the following: she is a citizen of California, and Defendant is a Delaware limited liability company headquartered in Texas.  *Id.* ¶¶ 7-8.  Plaintiff receives her email on a computer located within Los Angeles County, and Defendant designed its website "specifically to solicit California residents by including California specific programming and California specific language," and it receives "millions of dollars per year from California residents."  *Id.* ¶¶ 10, 12.  Defendants send "unsolicited commercial email advertisements" to which Plaintiff did not consent to receive and that "advertise services sold at the various websites owned by the Defendants."  *Id.* ¶ 25.  According to Plaintiff, "[m]ost, if not all, of the emails use hypertext mark up language ('HTML') in the body which contain remote hosted images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party."  *Id.* ¶ 26.  Remotely hosted images "allow the sender to disable or change the images at any time, even after the email has been transmitted."  Defendant's "agents used remote hosted images to essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendant[] and [its] agents."  *Id.* ¶ 28.  Plaintiff raises two causes of action: (1) violation of Cal. Bus. and Prof. Code § 17529.5(a)(2) based on the emails' deceptive headers, and (2) violation of Cal. Bus. and Prof. Code § 17529.5(a)(3) based on allegedly false representations in the emails' subject lines.  *See id.* ¶¶ 29-42.

Plaintiff filed suit in Los Angeles Superior Court on October 1, 2021.  *See generally id.* On October 29, 2021, Defendant removed the case to federal court, invoking the court's diversity jurisdiction.  *See generally* Defendant One Technologies, LLC's Notice of Removal, Docket No. 1.  Plaintiff now moves to remand this case back to state court, arguing that the Court lacks subject-matter jurisdiction.  *See* Plaintiff's Motion to Remand ("Motion"), Docket No. 17.

## II.     Legal Standard

"Federal courts are courts of limited jurisdiction," so they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may invoke federal removal jurisdiction if the case could have been filed originally in federal court. 28 U.S.C. § 1441. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). If the defendant fails to meet this burden, the case will be remanded to the state court. 28 U.S.C. § 1447.

### A.  Diversity Jurisdiction

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between citizens of different states. 28 U.S.C. § 1332. The Ninth Circuit has held that because § 1332's "amount-in-controversy requirement excludes only 'interest and costs,'" it "therefore includes attorneys' fees." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Further, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). "[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018); *see also Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018) (holding that the reasoning in *Chavez* applies to future attorneys' fees). Stated simply, attorneys' fees – both those already accrued at the time of removal *and* those future attorneys' fees – are included in the amount-in-controversy calculation. *See Fritsch*, 899 F.3d at 794-95.

### B.  Standing

Because the Constitution limits Article III federal courts' jurisdiction to "cases" and "controversies," a plaintiff's pleadings must establish standing. U.S. Const art. III, § 2. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

Establishing an injury in fact requires the plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo I*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). This element "is a constitutional requirement," so "'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). As a result, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. "To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exists' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) *cert. denied*, 138 S. Ct. 931 (2018) (quoting *Spokeo I*, 136 S. Ct. at 1548–49); *see also Spokeo I*, 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). "In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Id.*

In determining whether a statutory harm is sufficiently concrete to be an injury in fact, a court looks to whether the statute codifies a substantive or a procedural right. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–83 (9th Cir. 2017). A substantive provision "protects concrete interests," so the plaintiff need only plead a violation of that provision to establish an injury in fact. *Id.* at 983; *see also Silverstein v. Keynetics, Inc.*, 2:18-LACV-4100-JAK-(AGRx), 2018 WL 5795776, at *7 (C.D. Cal. Nov. 5, 2018) ("Where a statute codifies a substantive right, a plaintiff need not plead any additional harm beyond a violation of the statute to obtain standing."). A claim under a procedural provision, on the other hand, needs to be accompanied by allegations of a concrete harm in order to establish the requisite injury in fact. *Id.* at 982; *see also Spokeo I*, 136 S. Ct. at 154 (A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). To determine whether a provision is substantive – and thus protects concrete interests – or procedural, the Court looks to "both history and the judgment" of the legislature. *Spokeo I*, 136

S. Ct. at 1548; *see also Eichenberger*, 876 F.3d at 982–83 (looking to the text, purpose, and history of Video Privacy Protection Act of 1988 provision to conclude the relevant provision was substantive); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1040 (9th Cir. 2017) (same for the Telephone Consumer Protection Act of 1991).

### III.    Discussion

In essence, Plaintiff makes two arguments as to why the Court lacks subject-matter jurisdiction: (1) the amount in controversy does not exceed $75,000 as required for diversity jurisdiction, and (2) the complaint does not allege a concrete harm sufficient to establish an injury in fact for standing. For the reasons articulated below, the Court would disagree with Plaintiff on both points.

#### A.  Diversity Jurisdiction

On its face, Plaintiff's Complaint seeks statutory damages of $1,000 per email for 54 emails, as well as "attorneys' fees as part of costs pursuant to California Code of Civil Procedure § 1033.5(c)(5)(A) and California Business & Professions Code § 17529.5(b)(1)(c)." Compl. at 6. Plaintiff argues that the category of "attorneys' fees" should be included within the "unit" of costs and expenses, which 28 U.S.C. § 1332 does not include in the amount in controversy. Motion at 3. But Plaintiff largely relies on a Fourth Circuit case, *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983), an Eastern District of Washington district court case, *Holcombe v. Smithkline Beecham Corp.*, 272 F. Supp. 2d 792, 797 (E.D. Wis. 2003), and a Third Circuit case, *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997), *as amended* (Feb. 18, 1997). None of these cases is binding upon the Court. But more importantly, the Ninth Circuit has explicitly held that attorneys' fees – including future attorneys' fees – may be included in the amount-in-controversy calculation when the underlying statute provides for such an award. *See Guglielmino*, 506 F.3d at 700; *Galt G/S*, 142 F.3d at 1156; *Chavez*, 888 F.3d at 418; *Fritsch, LLC*, 899 F.3d at 794-95.

Here, the underlying California law provides that a "prevailing plaintiff" under Cal. Bus. and Prof. Code § 17529.5 may recover "reasonable attorney's fees and costs." Cal. Bus. & Prof. Code § 17529.8. Plaintiff seeks $54,000 in statutory damages. *See* Compl. at 6. In its Notice of Removal, Defendant asserted that Plaintiff's "attorney's fees will exceed $21,000," such that the total amount in controversy will exceed the $75,000 threshold. Notice of Removal, Docket No. 1 at 3. In support of this assertion, Defendant pointed to a similar § 17529.5 case in which the

4

plaintiff challenged eight emails and recovered $7,000 in liquidated damages after a trial. In that case, the California Court of Appeals found that the district court had not abused its discretion when it awarded $62,400 for the time spent on the case by one of the attorneys, using a $400/hour rate. Overall, the district court in that case awarded the plaintiff "substantially less than he had originally requested" – but still awarded him over $80,000 in attorneys' fees in the fight over the eight emails. *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1105 (2012), *as modified on denial of reh'g* (Mar. 21, 2012). The Court is inclined to agree with Defendants that attorneys' fees are likely to exceed $21,000 based on the 54 emails Plaintiff premises her claims, especially in light of the district court's attorney fees calculations in *Balsam*.

Furthermore, Plaintiff does not avoid this conclusion by praying for "attorney fees as part of costs pursuant to California Code of Civil Procedure § 1033.5." Compl. at 6. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law," *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), and as a result, the Court will not apply this provision of the California Code of Civil Procedure. And, as Defendant points out, Plaintiff seeks attorneys' fees not only under the California Code of Civil Procedure but also under Cal. Bus. & Prof. Code § 17529.5(b)(1)(c). *See* Compl. at 6. Ninth Circuit precedent indicates that such a provision for attorneys' fees in the underlying statute makes them includable in the amount-in-controversy calculation. *See Galt G/S*, 142 F.3d at 1156.

Accordingly, the Court would conclude that the requisite $75,000 amount in controversy has been met for this case, sufficient to establish diversity jurisdiction.

**B. Standing**

Plaintiff also argues that her Complaint does not establish an injury in fact that suffices to establish Article III standing. But as in two previous cases in which the Court has decided this issue – as well as in another case from this district – the Court would conclude that the Complaint does, in fact, establish an injury in fact sufficient to confer Article III standing. *See Durward v. One Techs. LLC*, 2:19-cv-6371-GW-(AGRx), 2019 WL 4930229, at *7 (C.D. Cal. Oct. 3, 2019); *Lynch v. AML Network Ltd.*, 2:21-cv-3574-GW-(RAOx), 2021 WL 4453470, at *3 (C.D. Cal. Sept. 27, 2021); *Silverstein v. Keynetics, Inc.*, No. 2:18-cv-04100-JAK-(AGRx), 2018 WL 5795776, at *7 (C.D. Cal. Nov. 5, 2018).

Plaintiff contends that Cal. Bus. and Prof. Code § 17529.5 is designed to regulate spammers' behavior, not help the injured recover from loss. But § 17529.5 codifies a substantive

5

right. As this Court previously articulated in a substantially similar case,

> California Business and Professions Code § 17529.5 prohibits, as relevant to this case, transmission of "(1) [an] e-mail advertisement [that] contains or is accompanied by a third-party's domain name without the permission of the third party," and "(2) [an] e-mail advertisement [that] contains or is accompanied by falsified, misrepresented, or forged header information." On its face, the text of § 17529.5 indicates that the provisions[1] are substantive prohibitions on the transmission of these types of emails. They do not, for example, resemble the Fair Credit Reporting Act ("FCRA") provisions at issue in *Spokeo I*, through which "Congress plainly sought to curb the dissemination of false information by *adopting procedures* designed to decrease that risk." *Spokeo I*, 136 S. Ct. at 1550 (emphasis added). An allegation that the defendant in that case had violated these procedures, without more, was not sufficient to establish an injury in fact because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.*
>
> In contrast, § 17529.5 prohibits the *transmission* of certain types of emails; in other words, the provision protects the concrete interest of preventing such transmissions. It does not establish procedures or regulate internal conduct as did the FCRA provisions in *Spokeo*. *See Spokeo I*, 136 S. Ct. at 1550. On the contrary, § 17529.5 closely resembles the Telephone Consumer Protection Act ("TCPA"), which prohibits junk faxes and unsolicited advertising calls. The Ninth Circuit has expressly held that "a violation of the TCPA is a concrete, *de facto* injury," citing the fact that "invasions of privacy, intrusion upon seclusion, and nuisance" are harms American courts have long recognized.[2] *Van Patten*, 847 F.3d at 1043. In passing the TCPA, "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements." *Id.* So too, here, with the [California] Legislature's passage of § 17529.5.

*Lynch*, 2021 WL 4453470, at *3. Indeed, this is further supported by the statements of the California legislature, set forth in the section preceding the one under which Plaintiff's claims arise:

---

[1] The same is true for § 17529.5(a)(3), under which Plaintiff brings her second cause of action. This subsection prohibits "[an] e-mail advertisement [that] has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3).

[2] As relevant here due to the similarity in medium, the Ninth Circuit has also held that a text message is a "call" for purposes of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

6

> (b) The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.
> (c) Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying.
> . . . .
> (e) Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.
> . . . .
> (g) Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate.
> (h) The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.
> (i) Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production.
> . . . .
> (l) In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems.

Cal. Bus. & Prof. Code § 17529. "Findings (e) and (h) explicitly compare the harms caused by spam emails to injuries caused by junk faxes and spam telephone calls, which (as discussed above) the Ninth Circuit has recognized as injuries in fact sufficient to confer Article III standing." *Lynch*, 2021 WL 4453470, at *4 (citing *Van Patten*, 847 F.3d at 1043). Thus, § 17529.5 codifies a substantive right of an email recipient to be protected from spam emails. *See Durward*, 2019 WL 4930229, at *8.

Moreover, the Complaint alleges more than a "bare procedural violation, divorced from any concrete harm." *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 781 (9th Cir. 2018).

Plaintiff alleges that Defendant "transmitted" emails to Plaintiff and frequently directs its agents to "send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them." Compl. ¶¶ 1, 3, 9. The emails sent to Plaintiff "contained false and/or misrepresented information contained in or accompanying the email headers" and "[m]ost of the emails contain deceptive subject lines." *Id.* ¶ 4. Defendant allegedly used "remote hosted images to essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendants and their agents." *Id.* ¶ 28. These allegations, along with others in the Complaint, suffice to establish precisely the harms that the California Legislature sought to prohibit in the passage of the relevant Act: "annoyance" to email users, virus proliferation, use of storage space in email inboxes – even with "spam" filters, and discouraging people from using email, among other harms. *See* Cal. Bus. & Prof. Code § 17529. Plaintiff cannot brush away the California Legislature's purpose by simply stating that she "is not alleging any actual damage or harm." Compl. ¶ 6. California enacted legislation to protect email users from all the harmful facets of spam email, and Plaintiff may not cherry-pick the Legislature's purpose merely to avoid federal court jurisdiction.

Plaintiff argues that *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), requires a different conclusion. But the Court already considered the impact of *TransUnion* on whether a claim under § 17529.5 establishes an injury in fact, and it concluded that *TransUnion* did not change the analysis. *See Lynch*, 2021 WL 4453470, at *5 ("In essence, the Supreme Court reaffirmed its holding in *Spokeo I*, more clearly delineating between purely procedural violations (even if egregious) and substantive ones. Here, § 17529.5 is a substantive provision, not a procedural one. Thus, the allegation that Defendant violated § 17529.5 by sending spam emails to Plaintiffs sufficiently establishes an injury in fact; no other allegations of harm are necessary."). Plaintiff presents no precedential or binding authority that necessitates another conclusion.[3]

As a result, the Court would conclude that Plaintiff's allegation that Defendant violated § 17529.5 by sending spam emails to Plaintiff establishes an injury in fact sufficient to confer

---

[3] Plaintiff asserts that the Ninth Circuit in *Bassett* "rejected *Eichenberger*." Motion at 13. On the contrary: *Bassett* relied on *Eichenberger* to reach its conclusion that the *Bassett* plaintiff's FCRA claims – unlike the Video Privacy Protection Act claims in *Eichenberger* – were merely procedural and thus insufficiently concrete to establish standing. *Bassett*, 883 F.3d at 782-83. This is unsurprising: the Supreme Court in *Spokeo* had already reached the same conclusion about similar FCRA claims. *Spokeo I*, 136 S. Ct. at 1550.

Article III standing.

## IV. Conclusion

Based on the foregoing discussion, the Court would DENY Plaintiff's Motion to Remand.