1  J. Daniel Jung, Esq. (SBN 243436)
   Anderson & Jung
2  21600 Oxnard St., Suite 1030
   Woodland Hills, CA 91367
3  (213) 927-6922

4  Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| Cherie Diaz,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>One Technologies LLC, and DOES 1-50 inclusive<br><br>　　　　Defendant. | Case No.: 2:21-CV-08571 GW (RAOx)<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)<br><br>Date:　　January 20, 2022<br>Time:　　8:30 a.m.<br>Crtrm.:　　9D<br><br>Action Filed: October 1, 2021<br>Action Removed: October 29, 2021<br>Trial Date: None Set<br>Honorable George Wu |
|---|---|

**Table of Contents**

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Defendant Operates a Membership Website that Is Designed to Solicit California Residents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Defendant Has Knowledge of Its Agents Transmitting Unwanted and Illegal Spam to California Residents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.  Defendant Has No Difficulty In Participating In California Litigation In This Case  Given Defendant's Legal History. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. There Is Jurisdiction Over Defendant In California. . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Defendant Is Subject To Jurisdiction In California, Due to Its Undisputed Largest Member Base Being In California. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.  Defendant Purposefully Avails Itself Of California Benefits By Exploiting The California Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.  <u>Zoobuh</u> Does Not Apply Because Thrive Was Not The Company Being Advertised And Simply Sold The Email Lists, Did Not Know The Locations of the Recipients Nor Made Substantial Revenue in Utah.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.  Defendant Operating A Highly Interactive Website Makes It Subject To California Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.  There Is A Connection Between Defendant, The Complained Of Emails, And This Forum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.  Asserting Jurisdiction Over Defendant is Reasonable. . . . . . . . . . . . . . . . . 11

IV. Plaintiff Requests Jurisdictional Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.  Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

OPPOSITION TO MOTION TO DISMISS

# Table of Authorities

**State Cases**

As You Sow v. Crawford Labs., 50 Cal. App. 4th 1859 (1996) . . . . . . . . . . . . . . . . . . . 7

Farina v. SA VWCL Tll, LLC, 50 Cal.App.5th 286 (2020). . . . . . . . . . . . . . . . . . . . . . 1

Hall v. LaRonde, 56 Cal.App.4th 1342 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Snowney v. Harrah's Entm't, Inc., 35 Cal. 4th 1054 (2005). . . . . . . . . . . . . . . . . . . 8, 9

Thurston v. Fairfield Collectibles of Ga., LLC, 53 Cal. App. 5th 1231, 268 Cal. Rptr. 3d 365 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

W. Corp. v. Superior Court, 116 Cal. App. 4th 1167 (2004). . . . . . . . . . . . . . . . . . . . 11

**Federal Cases**

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . 4, 10

Durward v. One Technologies, LLC, Case No. 2:19-cv-06371-GW(AGRX) (CD. Cal. 10/19/2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 13

Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017 (2021) . . 4, 5, 7, 13

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915(2011). . . . . . . . . . . 4

Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122  (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068 (2019). . . . . . . . . . . . . 13

International Shoe Co. v. Washington, 326 U.S. 310 (1945). . . . . . . . . . . . . . . . . . . . 4

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . 12, 13

Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 11

Phillips v. Worldwide Internet Sols., 2006 WL 1709189 (N.D. Cal. June 20, 2006) . . . 10

Sizova v. Nat. Institute of Standards & Technology, 282 F.3d 1320 (10th Cir. 2002) . . 12

Walden v. Fiore, 571 U. S. 277 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . 2

Zippo Mfg. Co. v. Zippo Dot Com, Inc. 952 F. Supp. 1119 (W.D.Pa. 1997) . . . . . . . . . . 8

Zoobuh, Inc. v. Williams, No. 2:13-CV-791 TS, 2014 U.S. Dist. LEXIS 175737 (D. Utah Dec. 18, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

**State Statutes**

California Business and Professions Code § 17529.5 . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

California Code of Civil Procedure § 410.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I. Introduction.

Jurisdiction is the issue of fair play and substantial justice. Defendant pay third parties to send illegal emails which advertise and direct recipients to Defendant's website. Now, Defendant hopes to increase the cost of litigation to Plaintiff's by moving the litigation to be outside of California and avoid following California law while profiting from California citizens. Additionally, it is UNFAIR to legitimate California businesses to have to compete with out of state businesses that have an advantage of avoiding being sued for breaching California statutes. By allowing Defendant's to dismiss this matter, the court will be giving another reason for California business to locate outside of this state.

Defendant's web site is specifically programmed to, and actually does take millions of dollars from California residents as a result of Defendant's third party marketing. Allowing Defendant to escape this jurisdiction would neither comport with fair play nor effect substantial justice.

Defendant One Technologies LLC ("OneTech" or "Defendant") intentionally makes more than $16,636,062 per year from its 144,075 California members of its web site, even more than in its home state of Texas. <u>Durward v. One Technologies, LLC</u>, Case No. 2:19-cv-06371-GW(AGRX) * 4, (CD. Cal. 10/19/2020) ("Durward"). Many of these California members are believed to have been solicited to Defendant's web site by unlawful unsolicited emails (aka "spam") similar to the spam complained of in this lawsuit and many other lawsuits.

Defendant claims that it has no control over these emailers (aka "spammers") and that these spammers are independent agents, yet they continue to PAY them for their services with the knowledge that spam email is being sent to Californians. This knowledge is obvious given the 144,075 California members that they have and prior lawsuits they have been in due to spam emails. Willful ignorance cannot be used as a defense. <u>Farina v. SA VWCL Tll, LLC</u>, 50 Cal.App.5th 286, 298 (2020).

Defendant's are doing everything in their power to state that they have no control

- 1 -

OPPOSITION TO
MOTION TO DISMISS

over their marketing despite the fact it admits to having extensive control over its agents. The Declaration of Astra Zittlau (Dkt #14-1) ("Zittlau Decl.") establishes Defendant's extensive control over the contents and methods of its spammers, included the 36 page document detailing the extent of the control. In other words, Defendant are picking and choosing what they control in an attempt to avoid California spam litigation.

If Defendant did not want to be subject to suit in California, it can simply instruct its publishers not to send emails to California, remove the California language from its web site, and remove the California specific programming that allows California residents to become members of its web site. Additionally, Defendant has the choice to avoid California jurisdiction by following the guidance from the Supreme Court and sever its connection to California, giving up $16,636,062 per year. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

## II. Facts.

### A. Defendant Operates a Membership Website that Is Designed to Solicit California Residents.

Defendant's web site is located at freescore360.com. Complaint ¶ 2. This web site is a membership based web site. Declaration of William Silverstein (Silverstein Decl) Exhibit A.

The web site is programmed specifically to solicit from California Residents. Silverstein Decl ¶ 13. The web site also has California specific language in its terms and privacy policy. See Silverstein Decl ¶ 14 and Exhibits B, C.

### B. Defendant Has Knowledge of Its Agents Transmitting Unwanted and Illegal Spam to California Residents.

In just over a year prior to this lawsuit, Defendant had been sued multiple times for unlawful spam to California. On June 12, 2020, Defendant was sued by Aaron Hicks for at least 25 spam emails in violation of California Business and Professions Code §

17529.5. <u>Hicks v. One Technologies LLC et al</u>, No. 2:20-cv-08763. On October 25, 2020, Defendant was sued by Joshua Grossman for forty-five spam emails in violation of California Business and Professions Code § 17529.5. <u>Grossman v. One Techs. LLC</u>, No. CV 20-9077-GW-JCx, 2020 U.S. Dist. LEXIS 258986, at *2 (C.D. Cal. Dec. 16, 2020).

With jurisdictional discovery, Plaintiff believes that it will be able to identify many more spam complaints that Defendant received as a result from California residents.

### C. Defendant Has No Difficulty In Participating In California Litigation In This Case Given Defendant's Legal History.

In 2011, Defendant was in the case of Consumerinfo.com, Inc. v. Alex Chang, No. CV 09-3783-VBF(MANx), 2011 U.S. Dist. LEXIS 162775 (C.D. Cal.)

On November 17, 2014, the Federal Trade Commission filed suit against Onetech in Federal District Court, <u>Northern District of California Federal Trade Commission et al, v. One Technologies, LP, et al.</u>, 3:14-CV-05066-JSC (N.D. Cal).

On June 11, 2021, Defendant filed <u>One Technologies, LLC, a Delaware Limited Liability Company vs Franchise Tax Board of the State of California, a State Government Agency</u>, in Los Angeles Superior Court Case No. 21STCV21844

. On December 10, 2021, Defendant filed an ex party application asking that this Court consolidate the hearing on this motion and previously heard motion to remand, because "One Technologies' in-house counsel overseeing this matter intends to attend, even if only by phone, the hearing on the motion to remand as he has on other occasions before this Court." Dkt # 18 at ¶ 3.

### III. There Is Jurisdiction Over Defendant In California.

The starting point for an analysis of personal jurisdiction is the forum state's long arm statute. California Code of Civil Procedure § 410.10 sets forth this state's long arm statute and provides that, "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." "Opinions in the

wake of the pathmarking International Shoe decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011).

A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when ties to that State are so "continuous and systematic" as to render them essentially at home in the forum State. Ibid. citing <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). Plaintiff is not arguing that Defendant is subject to general jurisdiction.

When individuals "purposefully derive benefit" from their interstate activities, it is unfair to allow such individuals to escape having to account for their activities in the state from which they purposefully derived a benefit, for the consequences that arise from such activities. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471 (1985).

Minimum contacts can be electronic or created through the use of the telephone, mail, or email. <u>Hall v. LaRonde</u>, 56 Cal.App.4th 1342, 1344, 1346 1347 (1997). What is important "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u> 444 U.S. 286, 297 (1980).

A court may exercise specific jurisdiction over a nonresident defendant only if: (1) purposefully avails itself of the privilege of conducting activities within the State, i.e. by exploiting a market in the forum state; (2) arise from or relate to the defendant's contacts; and principally, takes place in the forum State and is therefore subject to the State's regulation. <u>Ford Motor Co. v. Mont. Eighth Judicial Dist. Court</u>, 141 S. Ct. 1017, 1024-1025 (2021). Once these two elements are established by the Plaintiff, the burden thus shifts to the defendant to present a compelling case that jurisdiction would be unreasonable. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477, 105 S. Ct. 2174, 2184 (1985).

**A. Defendant Is Subject To Jurisdiction In California, Due to Its Undisputed Largest Member Base Being In California.**

    **1. Defendant Purposefully Avails Itself Of California Benefits By Exploiting The California Market.**

The Supreme Court in Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1025 (2021) citing Walden v. Fiore, 571 U. S. 277, 285 (2014), said a Plaintiff "must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Defendant's reliance upon Walden v. Fiore is misplaced, as Walden focused on two questions, one is targeting jurisdiction, and two "whether the defendant's actions connect him to the forum — petitioner formed no jurisdictionally relevant contacts with Nevada.." Id. 289. In other words, that defendant had no contacts with Nevada. Unlike in our case, Defendant successfully solicited millions of dollars and thousands of members from California.

Defendant exploits California by having a member base of 144,075 California residents to the tune of $16,636,062 per year. This exploitation is through Defendant's highly interactive web site specifically programmed to accept California residents and Defendant's continuing use of third party publishers.

Recent California case law, establishes that making a substantial number of sales of goods or services to California residents via one's own website constitutes purposeful availment. Thurston v. Fairfield Collectibles of Ga., LLC, 53 Cal. App. 5th 1231, 1240, 268 Cal. Rptr. 3d 365 (2020). Under Thurston, it found that purposeful availment can result from $320,000 to $375,00 per year of sales to California residents even though those amounts total eight to ten percent of its total sales. It is not undisputed that Defendant obtained $16,636,062 per year (or 12% of its total revenue) from California.[1]

---

[1] This is obtained from the Court ruling in Durward v. One Technologies, LLC, Case No. 2:19-cv-06371-GW(AGRX) * 4, (CD. Cal. 10/19/2020). If this Court considers

1 However, unlike Thurston where the amounts are from sales, here, Defendant forms
2 relationships with its customers who are in fact members of its web site, not just
3 customers making a single purchase.
4       In addition to the sales to California, Defendant programmed its web site to accept
5 California residents as members and included California specific language on the web
6 site. Silverstein Decl. ¶¶ 13, 14. Without this California specific programming, Defendant
7 would not have been able to receive money from California members. Additionally,
8 Defendant collecting its client's state location is important to them for marketing
9 additional services or remarketing campaigns.

11       **2.    Zoobuh Does Not Apply Because Thrive Was Not The Company**
12            **Being Advertised And Simply Sold The Email Lists, Did Not**
13            **Know The Locations of the Recipients Nor Made Substantial**
14            **Revenue in Utah**.
15       Defendant's are misconstruing the case of Zoobuh, Inc. v. Williams, No.
16 2:13-CV-791 TS, 2014 U.S. Dist. LEXIS 175737, at *4 (D. Utah Dec. 18, 2014). Thrive,
17 one of the defendants, was brought into court for the alleged violation of sending out
18 spam, though they never did, they simply sold the list to clients that used the lists to send
19 out spam. Thrive never worked on the emails, contents or who would be sent the emails,
20 they simply provided a list of emails. Zoobuh, Inc. v. Williams, Case No. 2:13-CV-791
21 TS, 2 (D. Utah Dec. 18, 2014) ("As part of its business, Thrive sells and rents email lists
22 for the purpose of email marketing. ") Thrive, did not have any right of CONTROL of
23 sending of the email, content or how the email list would be used.
24       Our case is substantially different, given that Defendant's can control how they
25 market and who they chose to market for them. Defendant's can control which emails can

27 the information stale, Plaintiff requests that Court the requests the information be
28 updated.

be sent, who it's sent to, which lists to use, content of those emails and more importantly, if they continue to PAY third party affiliates they know or should know have violated California email spam laws. The senders of the complained of emails are not random people, but they are Defendant's publishers whom it pays to add to their customer base.

In Zoobuh, Inc. V. Williams, the court looked at the novel argument made by Zoobuh that because the emails lists were created by Utah residents, this may show the lists are manufactured in Utah. Ibid at *8. However, the court found that Thrive did not have knowledge of the recipients of the email list. However, in our case Defendant is aware of the location every member that it services, in essence creating a service business in California.

Lastly, unlike here, "[Thrive] receives less than 1% of its sales revenue from Utah customers." Zoobuh, Inc. v. Williams, No. 2:13-CV-791 TS, 2014 U.S. Dist. LEXIS 175737, at *4 (D. Utah Dec. 18, 2014). California established that one percent of a companies world wide sales to California is sufficient for purposeful availment. As You Sow v. Crawford Labs., 50 Cal. App. 4th 1859 (1996).

Defendant's further reliance upon Zoobuh is misplaced as, unlike here, there is no evidence that Thrive purposefully availed itself of benefits of the jurisdiction. Additionally, there was no claim that Thrive specifically programmed its web site to accept customers from the jurisdiction.

Defendant argues that Ford does not change the outcome from Durward as Durward did not establish that Defendant had availed itself of California.

Thurston made it clear that $375,000 in sales to California residents is sufficient to establish purposeful availment. Defendant making more than 44 times the amount in Thurston.

Therefore, Defendant avails of California benefits to the tune of $16,636,062 per year.

OPPOSITION TO
MOTION TO DISMISS

### 3. Defendant Operating A Highly Interactive Website Makes It Subject To California Jurisdiction.

To determine whether a Web site is sufficient to establish purposeful availment, we first look to the sliding scale analysis described in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D.Pa. 1997) (Zippo). "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." Snowney v. Harrah's Entm't, Inc., 35 Cal. 4th 1054, 1063 (2005)

Defendant's misconstrues Snowney V. Harrah's Entertainment, Inc. by leaving out the fact that the misinformation given to Snowny on the electrical surcharge was by TELEPHONE though jurisdiction was found based on the website. In 2001, that plaintiff reserved a room by phone from his California residence at one of the hotels owned and operated by defendants. To make the reservation, plaintiff gave the reservation agent his credit card number. At the time plaintiff made the reservation, the agent told him that the room would cost $50 per night plus the room tax. When plaintiff paid his bill at checkout, however, the bill included a $3 energy surcharge. Snowney v. Harrah's Entertainment, Inc., 35 Cal.4th 1054, 1058 (Cal. 2005).

Snowney, found jurisdiction based only on the website. Though the Court in Snowney did mention the other types of advertisements, this was after they stated the website was enough. Snowney stated "We need not, however, decide on a particular approach here because defendants' Web site, by any standard, establishes purposeful availment." Snowney v. Harrah's Entertainment, Inc., supra at 1064. Additionally Snowney began looking at other types of advertisements after it stating the following, "In any event, even assuming that defendants' Web site, by itself, is not sufficient to establish purposeful availment, the site in conjunction with defendants' other contacts with California undoubtedly is." Snowney v. Harrah's Entertainment, Inc., supra at 1065.

Defendant operates a highly interactive web site. Silverstein Decl. ¶ 18.

Defendant's web site allows the users to manage the membership, check credit scores, contain interactive tools, provides educational materials, allows members to obtain credit reports, and even dispute negative items on credit reports. Silverstein Decl. ¶ 17 and Zittlau Decl. ¶ 3. Snowney supra at 1063, considered a hotel reservation system, "at a minimum, falls within the middle ground of the Zippo sliding scale." Defendant's web site is much more interactive than a hotel reservation system. Silverstein Decl. ¶ 18. Not only is Defendant's web site is more interactive than a hotel reservation system, but it is designed to solicit membership from California residents.

Therefore, Defendant purposefully availed itself of California jurisdiction.

### B. There Is A Connection Between Defendant, The Complained Of Emails, And This Forum.

The second prong of specific jurisdiction requires that the cause of action arise from *or relate* to the defendant's contacts; and principally, takes place in the forum State. Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, supra at 1024-1025 (2021).

The complained of emails received in California direct the recipient to Defendant's web site which generates $16,636,062 per year in sales from California members. It is only common sense that advertising relates to sales.

The complained of emails are transmitted to a California resident, containing Defendant's advertising copy and directs the recipient to Defendant's web site. A web site specifically programmed to accept California members utilizing California specific programming and California specific language which results in Defendant earning $16,636,062 per year from California members.

These emails are part of Defendant's marketing of its web site. In fact, the web site is Defendant's entire business and the primary method of interacting with its California members. Without these marketing tactics, Defendant would not be earning millions of dollars from California.

Plaintiff alleged that the complained of emails were sent by Defendant's agents.

1  Complaint ¶ 3. Defendant asserts that they do not send the emails, but all emails are sent
2  on its behalf by third parties called affiliates. Zittlau Decl. ¶ 10. These affiliates are
3  required to follow their rules and contract. See Zittlau Decl.
4        Defendant correctly cites, in its argument, that Phillips v. Worldwide Internet Sols.,
5  2006 WL 1709189, at *6 n.6 (N.D. Cal. June 20, 2006) ruled that emails sent by a third
6  party advertising its web site does automatically establish that the sender was working on
7  the web site owner's behalf. However, Defendant failed to deny that these emails were
8  sent by its affiliate(s) pursuant to the contract attached to the Zittlau Decl. Not only do
9  these emails contain Defendant's advertising copy, but more importantly, the tracking of
10 the links indicate that these emails were sent by affiliates on Defendant's behalf per the
11 terms of Defendant's affiliate contract. Silverstein Decl. ¶ 25.
12       Defendant's are SILENT if they share the location of their clients with the
13 marketing companies which may re-market to their lead base with knowledge of their
14 address. Many, if not all marketing companies send multi email campaigns and collect
15 information from their leads as that information comes in. Additionally, it is not known if
16 the complained of emails are from original campaigns or remarketing campaigns, where
17 this information could be available.
18       Where Plaintiff has not had the opportunity to do jurisdictional discovery, Plaintiff
19 requests that she be permitted to do so to establish connection between Defendant and its
20 agents. Even without jurisdictional discovery, Plaintiff believes there is enough of a
21 connection between Defendant, the emails, and California to satisfy personal jurisdiction
22 over Defendant.
23       Allowing individuals to purposefully derive benefit from their interstate activities,
24 would be unfair to allow them to avoid from being held to account for the consequences
25 that arise proximately from such activities. Burger King Corp. v. Rudzewicz, 471 U.S.
26 462, 473-74 (1985).
27       Attempting to parallel this case to Zoobuh, Defendant claims that it has no control
28 over the emails or that they have no control over the "independent contractors known as

- 10 -      OPPOSITION TO MOTION TO DISMISS

1 "publishers" or "affiliates" to send emails advertising One Technologies' products and
2 services." Zittlau Decl. ¶ 10. This claim is belied by Defendant's 36 page contract with
3 these affiliates that detail great control. Zittlau Decl. ¶ 14 and Exhibit A. These
4 supposedly non-controlled independent contractors are required to obtain pre-approval of
5 all "creatives, friendly from line, domain, and subject lines." Zittlau Decl. Exhibit A,
6 page 17 In contrast, "[Thrive] does not draft the content of the emails sent by the
7 publishers; review or approve them." Zoobuh, supra at *14. (D. Utah Dec. 18, 2014.) By
8 choosing not to review the drafts of the emails, shows their willful ignorance to be held
9 responsible for it's contents. Additionally, Defendant's could request the emails sent to
10 their California customers by these marketing agencies and if found to be illegal, stop
11 payment for these emails. However, they do not. Why should they, when they are
12 profiting from illegal emails and also not going to be held responsible for them.

### C. Asserting Jurisdiction Over Defendant is Reasonable.

"A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.' " Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1988)

Moreover, generally requiring a corporation to litigate in California does not represent an inconvenience so great as to deprive the corporation of due process. "As [one] court stated, ' "in this era of fax machines and discount air travel" requiring [a defendant] to litigate in California is not constitutionally unreasonable.' " (Ibid.; Colt Studio, Inc. v. Badpuppy Enterprise, supra, 75 F. Supp. 2d 1104, 1110.) W. Corp. v. Superior Court, 116 Cal. App. 4th 1167, 1180 (2004).

Recently Defendant voluntarily engaged in litigation in California. In 2014, Defendant into a stipulated judgment as a result of ligation it participated in the Northern District of California. In 2011, Defendant was involved in a jury trial in this district.

Furthermore, Defendant admits its agents come to California to appear at hearings

- 11 -

OPPOSITION TO MOTION TO DISMISS

1  in its request for hearing scheduling changes. Declaration of Witt W. Chang (Dkt # 18-1)
2  ¶ 3.
3       Unlike Defendant, Plaintiff is an individual that does not make millions of dollars
4  per year from Texas. If Plaintiff was required to litigate this in Texas, she would have to
5  locate counsel in Texas. Defendant has counsel in California that represents it.
6       California has an interest in protecting its citizens from spam. It has been
7  established passing three separate laws against spam, California Business & Professions
8  Code §§ 17538.4, 17538.45, and 17529, et seq. As a result of the CAN-SPAM Act
9  preemption, California passed SB 1457[2] to insure that spammers would be punished. In
10 addition, California has brought an action against a spammer. [3]

## IV. Plaintiff Requests Jurisdictional Discovery.

Pursuant to Federal Rule of Civil Procedure 26, when a defendant challenges the court's jurisdiction, the plaintiff may obtain jurisdictional discovery. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, n. 13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"). The showing required to obtain jurisdictional discovery is low. Jurisdictional discovery is required if such discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction." <u>Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1135 (9th Cir. 2003), <u>Sizova v. Nat. Institute of Standards & Technology</u>, 282 F.3d 1320, 1326 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that

---

[2] See http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_1451-1500/sb_1457_cfa_20040621_173438_asm_comm.html

[3] See https://www.ftc.gov/sites/default/files/documents/cases/2005/04/050413comp0423172.pdf

OPPOSITION TO
MOTION TO DISMISS

1   motion…[A] refusal to grant discovery constitutes an abuse of discretion if the denial
2   results in prejudice to a litigant."). Traditional discovery rules also permit plaintiffs to
3   obtain discovery in order to oppose a motion to dismiss. <u>Oppenheimer Fund, Inc</u>, supra at
4   351 n.13 ("where issues arise as to jurisdiction or venue, discovery is available to
5   ascertain the facts bearing on such issues")
6       Here, the requested discovery will permit Plaintiff to show that Defendant ratified
7   its publishers transmission of emails into California by showing that Defendant was
8   aware that its publishers were sending emails into California and accepting the benefits of
9   those actions. <u>Henderson v. United Student Aid Funds, Inc</u>., 918 F.3d 1068, 1075 (2019).
10      Plaintiff will also request updated information as to sales and membership numbers
11  for the last four years, if the numbers from the ruling in <u>Durward</u> is insufficient. Plaintiff
12  also request information on if Defendant's share their clients information with their
13  marketing agencies, website traffic location on their website or any other state identifying
14  information.
15
16  **V.    Conclusion.**
17      As discussed above, Defendant purposefully availed itself of California by having
18  substantial sales, continuing member relationships, control of its marketing, continuing
19  payment of known agents that send spam to California, knowledge of its client's location,
20  and highly interactive web site.
21      This cause of action is directly related to Defendant's marketing and web site sales,
22  especially given that its entire business is centered around Defendant's web site, and its
23  members are serviced in California, and it has more members in California than any other
24  state – similar to <u>Ford</u>.
25      It would be wrong to allow them to cause mayhem in a forum that they
26  significantly profit and then not be called to task in California. Especially when it would
27  be a great hardship for Plaintiff to go to Texas to seek justice. Additionally, at a time
28  where California is losing its businesses to other states, by dismissing this case this court

will provide another reason for legitimate companies to leave California.

If the Court does not find jurisdiction in this case, Plaintiff respectfully requests that she be permitted jurisdictional discovery as requested above.

Dated: January 7, 2022

<u>/s/ J. Daniel Jung</u>
J. Daniel Jung
Attorney for Plaintiff