Name: J. Daniel Jung (SBN 243436)
Address: 21600 Oxnard St., Suite 1030
City, State, Zip: Woodland Hills, CA 91367
Phone: (213) 927-6922
Fax:
E-Mail: daniel@andersonjung.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Cherie Diaz

PLAINTIFF(S),

v.

One Technologies LLC, and DOES 1-50, inclusive

DEFENDANT(S).

CASE NUMBER:

2:21-cv-08571-GW (AGRx)

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____Cherie Diaz_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Denying Motion to Remand.

☐ Judgment (specify):

☒ Other (specify):
   Order Granting of motion to dismiss under 12 (b)(2).

Imposed or Filed on _____. Entered on the docket in this action on 1/6/2022, 1/21/2022.

A copy of said judgment or order is attached hereto.

February 17, 2022                    /s/ J. Daniel Jung
Date                                 Signature
                                     ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

Note:   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-8571-GW-AGRx | Date | January 6, 2022 |
|---|---|---|---|
| Title | *Cherie Diaz v. One Technologies, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ju-In D. Jung | Nicole N. King |
| | Witt W. Chang |
| | Ari N. Rothman |

**PROCEEDINGS:** TELEPHONIC HEARING ON PLAINTIFF'S MOTION TO REMAND [17]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court DENIES Plaintiff's Motion.

Court and counsel confer re upcoming motion to dismiss. The parties will file a stipulation to continue the briefing schedule as soon as conveniently possible.

: 18

Initials of Preparer   JG

<u>*Cherie Diaz v. One Technologies LLC*</u>; Case No. 2:21-cv-08571-GW-(RAOx)
Tentative Ruling on Motion to Remand

I. **Background**

Plaintiff Cherie Diaz sued Defendant One Technologies for violations of California Business and Professions Code §§ 17529.5(a)(2) and 17529.5(a)(3) arising from 54 unsolicited emails. *See generally* Complaint ("Compl."), No Docket. 1-1. Plaintiff seeks statutory damages of $1,000 per email, and "attorneys' fees as part of costs." *Id.* at 6.

Plaintiff alleges the following: she is a citizen of California, and Defendant is a Delaware limited liability company headquartered in Texas. *Id.* ¶¶ 7-8. Plaintiff receives her email on a computer located within Los Angeles County, and Defendant designed its website "specifically to solicit California residents by including California specific programming and California specific language," and it receives "millions of dollars per year from California residents." *Id.* ¶¶ 10, 12. Defendants send "unsolicited commercial email advertisements" to which Plaintiff did not consent to receive and that "advertise services sold at the various websites owned by the Defendants." *Id.* ¶ 25. According to Plaintiff, "[m]ost, if not all, of the emails use hypertext mark up language ('HTML') in the body which contain remote hosted images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party." *Id.* ¶ 26. Remotely hosted images "allow the sender to disable or change the images at any time, even after the email has been transmitted." Defendant's "agents used remote hosted images to essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendant[] and [its] agents." *Id.* ¶ 28. Plaintiff raises two causes of action: (1) violation of Cal. Bus. and Prof. Code § 17529.5(a)(2) based on the emails' deceptive headers, and (2) violation of Cal. Bus. and Prof. Code § 17529.5(a)(3) based on allegedly false representations in the emails' subject lines. *See id.* ¶¶ 29-42.

Plaintiff filed suit in Los Angeles Superior Court on October 1, 2021. *See generally id.* On October 29, 2021, Defendant removed the case to federal court, invoking the court's diversity jurisdiction. *See generally* Defendant One Technologies, LLC's Notice of Removal, Docket No. 1. Plaintiff now moves to remand this case back to state court, arguing that the Court lacks subject-matter jurisdiction. *See* Plaintiff's Motion to Remand ("Motion"), Docket No. 17.

1

## II. Legal Standard

"Federal courts are courts of limited jurisdiction," so they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may invoke federal removal jurisdiction if the case could have been filed originally in federal court. 28 U.S.C. § 1441. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). If the defendant fails to meet this burden, the case will be remanded to the state court. 28 U.S.C. § 1447.

### A. Diversity Jurisdiction

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between citizens of different states. 28 U.S.C. § 1332. The Ninth Circuit has held that because § 1332's "amount-in-controversy requirement excludes only 'interest and costs,'" it "therefore includes attorneys' fees." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Further, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). "[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018); *see also Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018) (holding that the reasoning in *Chavez* applies to future attorneys' fees). Stated simply, attorneys' fees – both those already accrued at the time of removal *and* those future attorneys' fees – are included in the amount-in-controversy calculation. *See Fritsch*, 899 F.3d at 794-95.

### B. Standing

Because the Constitution limits Article III federal courts' jurisdiction to "cases" and "controversies," a plaintiff's pleadings must establish standing. U.S. Const art. III, § 2. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

2

Establishing an injury in fact requires the plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo I*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). This element "is a constitutional requirement," so "'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). As a result, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. "To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exists' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) *cert. denied*, 138 S. Ct. 931 (2018) (quoting *Spokeo I*, 136 S. Ct. at 1548–49); *see also Spokeo I*, 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). "In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Id.*

In determining whether a statutory harm is sufficiently concrete to be an injury in fact, a court looks to whether the statute codifies a substantive or a procedural right. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–83 (9th Cir. 2017). A substantive provision "protects concrete interests," so the plaintiff need only plead a violation of that provision to establish an injury in fact. *Id.* at 983; *see also Silverstein v. Keynetics, Inc.*, 2:18-LACV-4100-JAK-(AGRx), 2018 WL 5795776, at *7 (C.D. Cal. Nov. 5, 2018) ("Where a statute codifies a substantive right, a plaintiff need not plead any additional harm beyond a violation of the statute to obtain standing."). A claim under a procedural provision, on the other hand, needs to be accompanied by allegations of a concrete harm in order to establish the requisite injury in fact. *Id.* at 982; *see also Spokeo I*, 136 S. Ct. at 154 (A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). To determine whether a provision is substantive – and thus protects concrete interests – or procedural, the Court looks to "both history and the judgment" of the legislature. *Spokeo I*, 136

3

S. Ct. at 1548; *see also Eichenberger*, 876 F.3d at 982–83 (looking to the text, purpose, and history of Video Privacy Protection Act of 1988 provision to conclude the relevant provision was substantive); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1040 (9th Cir. 2017) (same for the Telephone Consumer Protection Act of 1991).

### III. Discussion

In essence, Plaintiff makes two arguments as to why the Court lacks subject-matter jurisdiction: (1) the amount in controversy does not exceed $75,000 as required for diversity jurisdiction, and (2) the complaint does not allege a concrete harm sufficient to establish an injury in fact for standing. For the reasons articulated below, the Court would disagree with Plaintiff on both points.

#### A. Diversity Jurisdiction

On its face, Plaintiff's Complaint seeks statutory damages of $1,000 per email for 54 emails, as well as "attorneys' fees as part of costs pursuant to California Code of Civil Procedure § 1033.5(c)(5)(A) and California Business & Professions Code § 17529.5(b)(1)(c)." Compl. at 6. Plaintiff argues that the category of "attorneys' fees" should be included within the "unit" of costs and expenses, which 28 U.S.C. § 1332 does not include in the amount in controversy. Motion at 3. But Plaintiff largely relies on a Fourth Circuit case, *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983), an Eastern District of Washington district court case, *Holcombe v. Smithkline Beecham Corp.*, 272 F. Supp. 2d 792, 797 (E.D. Wis. 2003), and a Third Circuit case, *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997), *as amended* (Feb. 18, 1997). None of these cases is binding upon the Court. But more importantly, the Ninth Circuit has explicitly held that attorneys' fees – including future attorneys' fees – may be included in the amount-in-controversy calculation when the underlying statute provides for such an award. *See Guglielmino*, 506 F.3d at 700; *Galt G/S*, 142 F.3d at 1156; *Chavez*, 888 F.3d at 418; *Fritsch, LLC*, 899 F.3d at 794-95.

Here, the underlying California law provides that a "prevailing plaintiff" under Cal. Bus. and Prof. Code § 17529.5 may recover "reasonable attorney's fees and costs." Cal. Bus. & Prof. Code § 17529.8. Plaintiff seeks $54,000 in statutory damages. *See* Compl. at 6. In its Notice of Removal, Defendant asserted that Plaintiff's "attorney's fees will exceed $21,000," such that the total amount in controversy will exceed the $75,000 threshold. Notice of Removal, Docket No. 1 at 3. In support of this assertion, Defendant pointed to a similar § 17529.5 case in which the

4

plaintiff challenged eight emails and recovered $7,000 in liquidated damages after a trial. In that case, the California Court of Appeals found that the district court had not abused its discretion when it awarded $62,400 for the time spent on the case by one of the attorneys, using a $400/hour rate. Overall, the district court in that case awarded the plaintiff "substantially less than he had originally requested" – but still awarded him over $80,000 in attorneys' fees in the fight over the eight emails. *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1105 (2012), *as modified on denial of reh'g* (Mar. 21, 2012). The Court is inclined to agree with Defendants that attorneys' fees are likely to exceed $21,000 based on the 54 emails Plaintiff premises her claims, especially in light of the district court's attorney fees calculations in *Balsam*.

Furthermore, Plaintiff does not avoid this conclusion by praying for "attorney fees as part of costs pursuant to California Code of Civil Procedure § 1033.5." Compl. at 6. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law," *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), and as a result, the Court will not apply this provision of the California Code of Civil Procedure. And, as Defendant points out, Plaintiff seeks attorneys' fees not only under the California Code of Civil Procedure but also under Cal. Bus. & Prof. Code § 17529.5(b)(1)(c). *See* Compl. at 6. Ninth Circuit precedent indicates that such a provision for attorneys' fees in the underlying statute makes them includable in the amount-in-controversy calculation. *See Galt G/S*, 142 F.3d at 1156.

Accordingly, the Court would conclude that the requisite $75,000 amount in controversy has been met for this case, sufficient to establish diversity jurisdiction.

**B. Standing**

Plaintiff also argues that her Complaint does not establish an injury in fact that suffices to establish Article III standing. But as in two previous cases in which the Court has decided this issue – as well as in another case from this district – the Court would conclude that the Complaint does, in fact, establish an injury in fact sufficient to confer Article III standing. *See Durward v. One Techs. LLC*, 2:19-cv-6371-GW-(AGRx), 2019 WL 4930229, at *7 (C.D. Cal. Oct. 3, 2019); *Lynch v. AML Network Ltd.*, 2:21-cv-3574-GW-(RAOx), 2021 WL 4453470, at *3 (C.D. Cal. Sept. 27, 2021); *Silverstein v. Keynetics, Inc.*, No. 2:18-cv-04100-JAK-(AGRx), 2018 WL 5795776, at *7 (C.D. Cal. Nov. 5, 2018).

Plaintiff contends that Cal. Bus. and Prof. Code § 17529.5 is designed to regulate spammers' behavior, not help the injured recover from loss. But § 17529.5 codifies a substantive

5

right.  As this Court previously articulated in a substantially similar case,

> California Business and Professions Code § 17529.5 prohibits, as relevant to this case, transmission of "(1) [an] e-mail advertisement [that] contains or is accompanied by a third-party's domain name without the permission of the third party," and "(2) [an] e-mail advertisement [that] contains or is accompanied by falsified, misrepresented, or forged header information."  On its face, the text of § 17529.5 indicates that the provisions[1] are substantive prohibitions on the transmission of these types of emails.  They do not, for example, resemble the Fair Credit Reporting Act ("FCRA") provisions at issue in *Spokeo I*, through which "Congress plainly sought to curb the dissemination of false information by *adopting procedures* designed to decrease that risk."  *Spokeo I*, 136 S. Ct. at 1550 (emphasis added).  An allegation that the defendant in that case had violated these procedures, without more, was not sufficient to establish an injury in fact because a "violation of one of the FCRA's procedural requirements may result in no harm."  *Id.*
>
> In contrast, § 17529.5 prohibits the *transmission* of certain types of emails; in other words, the provision protects the concrete interest of preventing such transmissions.  It does not establish procedures or regulate internal conduct as did the FCRA provisions in *Spokeo*.  *See Spokeo I*, 136 S. Ct. at 1550.  On the contrary, § 17529.5 closely resembles the Telephone Consumer Protection Act ("TCPA"), which prohibits junk faxes and unsolicited advertising calls.  The Ninth Circuit has expressly held that "a violation of the TCPA is a concrete, *de facto* injury," citing the fact that "invasions of privacy, intrusion upon seclusion, and nuisance" are harms American courts have long recognized.[2]  *Van Patten*, 847 F.3d at 1043.  In passing the TCPA, "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."  *Id.*  So too, here, with the [California] Legislature's passage of § 17529.5.

*Lynch*, 2021 WL 4453470, at *3.  Indeed, this is further supported by the statements of the California legislature, set forth in the section preceding the one under which Plaintiff's claims arise:

---

[1] The same is true for § 17529.5(a)(3), under which Plaintiff brings her second cause of action.  This subsection prohibits "[an] e-mail advertisement [that] has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."  Cal. Bus. & Prof. Code § 17529.5(a)(3).

[2] As relevant here due to the similarity in medium, the Ninth Circuit has also held that a text message is a "call" for purposes of the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

6

>  (b) The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.
>  (c) Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying.
>  . . . .
>  (e) Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.
>  . . . .
>  (g) Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate.
>  (h) The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.
>  (i) Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production.
>  . . . .
>  (l) In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems.

Cal. Bus. & Prof. Code § 17529.  "Findings (e) and (h) explicitly compare the harms caused by spam emails to injuries caused by junk faxes and spam telephone calls, which (as discussed above) the Ninth Circuit has recognized as injuries in fact sufficient to confer Article III standing." *Lynch*, 2021 WL 4453470, at *4 (citing *Van Patten*, 847 F.3d at 1043).  Thus, § 17529.5 codifies a substantive right of an email recipient to be protected from spam emails. *See Durward*, 2019 WL 4930229, at *8.

Moreover, the Complaint alleges more than a "bare procedural violation, divorced from any concrete harm." *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 781 (9th Cir. 2018).

7

Plaintiff alleges that Defendant "transmitted" emails to Plaintiff and frequently directs its agents to "send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them." Compl. ¶¶ 1, 3, 9. The emails sent to Plaintiff "contained false and/or misrepresented information contained in or accompanying the email headers" and "[m]ost of the emails contain deceptive subject lines." *Id.* ¶ 4. Defendant allegedly used "remote hosted images to essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendants and their agents." *Id.* ¶ 28. These allegations, along with others in the Complaint, suffice to establish precisely the harms that the California Legislature sought to prohibit in the passage of the relevant Act: "annoyance" to email users, virus proliferation, use of storage space in email inboxes – even with "spam" filters, and discouraging people from using email, among other harms. *See* Cal. Bus. & Prof. Code § 17529. Plaintiff cannot brush away the California Legislature's purpose by simply stating that she "is not alleging any actual damage or harm." Compl. ¶ 6. California enacted legislation to protect email users from all the harmful facets of spam email, and Plaintiff may not cherry-pick the Legislature's purpose merely to avoid federal court jurisdiction.

Plaintiff argues that *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), requires a different conclusion. But the Court already considered the impact of *TransUnion* on whether a claim under § 17529.5 establishes an injury in fact, and it concluded that *TransUnion* did not change the analysis. *See Lynch*, 2021 WL 4453470, at *5 ("In essence, the Supreme Court reaffirmed its holding in *Spokeo I*, more clearly delineating between purely procedural violations (even if egregious) and substantive ones. Here, § 17529.5 is a substantive provision, not a procedural one. Thus, the allegation that Defendant violated § 17529.5 by sending spam emails to Plaintiffs sufficiently establishes an injury in fact; no other allegations of harm are necessary."). Plaintiff presents no precedential or binding authority that necessitates another conclusion.[3]

As a result, the Court would conclude that Plaintiff's allegation that Defendant violated § 17529.5 by sending spam emails to Plaintiff establishes an injury in fact sufficient to confer

---

[3] Plaintiff asserts that the Ninth Circuit in *Bassett* "rejected *Eichenberger*." Motion at 13. On the contrary: *Bassett* relied on *Eichenberger* to reach its conclusion that the *Bassett* plaintiff's FCRA claims – unlike the Video Privacy Protection Act claims in *Eichenberger* – were merely procedural and thus insufficiently concrete to establish standing. *Bassett*, 883 F.3d at 782-83. This is unsurprising: the Supreme Court in *Spokeo* had already reached the same conclusion about similar FCRA claims. *Spokeo I*, 136 S. Ct. at 1550.

8

Article III standing.

## IV.     Conclusion

Based on the foregoing discussion, the Court would DENY Plaintiff's Motion to Remand.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-8571-GW-AGRx | Date | January 21, 2022 |
| Title | *Cherie Diaz v. One Technologies, LLC, et al.* | Page | 1 of 1 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER**

    The Court adopts its Tentative Ruling on Defendant's motion to dismiss (ECF No. 33) as its final decision on said motion. The Court would also respond to a particular argument made by Plaintiff's counsel at the January 20, 2022 hearing on said motion.

    Plaintiff argued that the Court's ruling is contrary to the holding in *Snowney v. Harrah's Entertainment, Inc.*, 35 Cal. 4th 1054, 1058 (Cal. 2005). However, the facts in *Snowney* were distinguished from those that are present in this litigation. Additionally, as has been recognized, recent decisions of the United States Supreme Court have "cast doubt" on the California Supreme Court's "substantial connection" formulation in *Snowney*, 35 Cal. 4th at 1063. *See, e.g., Rivelli v. Hemm*, 67 Cal. App. 5th 380, 400 (2021) ("recent decisions of the United States Supreme Court have cast doubt on the validity of the 'substantial connection' formulation."). The United States Supreme Court squarely torpedoed the California Supreme Court's rulings stating that:

> For this reason, the California Supreme Court's "sliding scale approach" is difficult to square with our precedents. Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction. For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, "[a] corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' "

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (citation omitted).

    Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, and the case is dismissed.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 21-8571-GW-AGRx | Date | January 18, 2022 |
|---|---|---|---|
| Title | *Cherie Diaz v. One Technologies, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANT ONE TECHNOLOGIES, LLC'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) [14]

Attached hereto is the Court's Tentative Ruling on Defendant's Motion to Dismiss [14], presently set for January 20, 2022 at 8:30 a.m. Counsel are to appear telephonically by contacting the court clerk at javier_gonzalez@cacd.uscourts.gov for dial-in instructions.

:

Initials of Preparer   JG

*Cherie Diaz v. One Technologies LLC*; Case No. 2:21-cv-08571-GW-(RAOx)
Tentative Ruling on Motion to Dismiss for Lack of Personal Jurisdiction

I. **Background**

Plaintiff Cherie Diaz sued Defendant One Technologies for violations of California Business and Professions Code §§ 17529.5(a)(2) and 17529.5(a)(3) arising from 54 unsolicited emails. *See generally* Complaint ("Compl."), Docket No. 1-1. Plaintiff seeks statutory damages of $1,000 per email, and "attorneys' fees as part of costs." *Id.* at 6.

Plaintiff alleges that she is a citizen of California and that Defendant is a Delaware limited liability company headquartered in Texas. *Id.* ¶¶ 7-8. Plaintiff receives her email on a computer located within Los Angeles County, and Defendant designed its website "specifically to solicit California residents by including California specific programming and California specific language." *Id.* ¶ 10. Plaintiff further alleges that Defendant "has thousands of members located in California" and that it receives "millions of dollars per year from California residents." *Id.* ¶¶ 11-12. Plaintiff also asserts that Defendant has filed at least one lawsuit in California courts. ¶ 13.

According to Plaintiff, Defendant "engages numerous third party advertising networks and affiliates" to send "unsolicited commercial email advertisements" that Plaintiff did not consent to receive and that "advertise services sold at the various websites owned by the Defendants." *Id.* ¶¶ 3, 25. As Plaintiff alleges, "[m]ost, if not all, of the emails use hypertext mark up language ('HTML') in the body which contain remote hosted images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party." *Id.* ¶ 26. Remotely hosted images "allow the sender to disable or change the images at any time, even after the email has been transmitted." Defendant's "agents used remote hosted images to essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendant[] and [its] agents." *Id.* ¶ 28. Plaintiff raises two causes of action: (1) violation of Cal. Bus. and Prof. Code § 17529.5(a)(2) based on the emails' deceptive headers, and (2) violation of Cal. Bus. and Prof. Code § 17529.5(a)(3) based on allegedly false representations in the emails' subject lines. *See id.* ¶¶ 29-42.

Plaintiff filed suit in Los Angeles Superior Court on October 1, 2021. *See generally id.*

1

On October 29, 2021, Defendant removed the case to federal court, invoking the court's diversity jurisdiction. *See generally* Defendant One Technologies, LLC's Notice of Removal, Docket No. 1. Defendant now moves to dismiss the case for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Motion to Dismiss Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) ("Motion"), Docket No. 14. Plaintiff opposes the motion, *see* Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ("Opp."), Docket No. 29, and Defendant replied, *see* Defendant's Reply, Docket No. 31.[1]

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a matter for "lack of jurisdiction over the person." When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish the court's personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff may meet this burden by making a "prima facie showing of jurisdictional facts." *Id.* (quotation omitted). "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quotation omitted). However, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10. A court may exercise personal jurisdiction over a nonresident defendant

---

[1] In support of its Opposition brief, Plaintiff submitted the declaration of software developer William Silverstein. *See* Decl. of William Silverstein, Docket No. 29-1. Defendant makes numerous objections to the Silverstein Declaration in its Reply. *See* Reply, Defendant's Objections to Decl. of William Silverstein, Docket No. 31-1. Given the Court's determinations here, the Court would find that these objections are moot. Parties may re-raise or address further objections, if necessary, at the hearing.

2

consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8-9 (1984). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quotation omitted). Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test to evaluate whether the court may exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). The plaintiff bears the burden of satisfying the first two prongs of the test; if the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). This relationship "must arise out of contacts that the defendant *himself* creates with the forum State," and it must center on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotations omitted). As a result, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (quoting *Walden*, 571 U.S. at 286). The Supreme Court recently clarified the rationale of the specific-jurisdiction framework, stating that unlike general jurisdiction, specific jurisdiction:

3

> covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." [*Burger King*, 471 U.S. at 475]. The defendant, we have said, must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." [*Hanson v. Denckla*, 357 U.S. 235, 253 (1958)]. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." [*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)]. They must show that the defendant deliberately "reached out beyond" its home – by, for example, "exploiting a market" in the forum State or entering a contractual relationship centered there. [*Walden*, 571 U.S. at 285]. Yet even then – because the defendant is not "at home" – the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. [*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *see, e.g.*, *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales*, 466 U.S. at 414; *International Shoe*, 326 U.S. at 319]. Or put just a bit differently, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." [*Bristol-Myers*, 137 S.Ct., at 1780].

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (cleaned up). The principles driving the specific-jurisdiction analysis are ensuring that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, and "protecting 'interstate federalism.'" *Ford Motor*, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 293 (1980)). In other words, the doctrine of specific jurisdiction limits the encroachment of one State upon another State's authority, as "[o]ne State's 'sovereign power to try' a suit, we have recognized, may prevent 'sister States' from exercising their like authority." *Id.*

### III. Discussion

A corporation may be subject to general jurisdiction in a state only if its contacts with that state are so "continuous and systematic" that it is "essentially at home in the forum State." *Daimler AG v. Bauman*, 134 U.S. 746, 761 (2014). Plaintiff alleges that Defendant is a Delaware limited liability company with its headquarters in Texas. Compl. ¶ 8. Defendant states that it is a Texas limited liability company with its principal place of business in Texas and that

4

all of its members are Texas citizens.  Motion, Decl. of Astra Zittlau ("Zittlau Decl.") at ¶ 3.  Either way, the Court would conclude that Defendants are not subject to general jurisdiction in California.  *Cf. Durward v. One Techs. LLC*, CV 2:19-cv-6371-GW-(AGRx), 2019 WL 4930229, at *3 (C.D. Cal. Oct. 3, 2019) (reaching the same conclusion as to this same defendant).

As for specific jurisdiction, the Court applies the three-prong test articulated by the Ninth Circuit in *Schwarzenegger*, 374 F.3d at 802, as delineated, *supra*.  The Court would conclude that Plaintiff's allegations fall short of establishing specific jurisdiction over Defendant.  For one, Plaintiff alleges "that OneTech admits to having no control over the email[s] sent" because "Defendant admitted under oath that it has no control over the emails."  Compl. ¶ 5.  Thus, Plaintiff appears to concede that Defendant does not "purposefully direct" its activities toward California or "purposefully avail" itself of the forum.  *Schwarzenegger*, 374 F.3d at 802.  Plaintiff alleges that Defendant operates the website "freescore360.com," which is a "membership based web site" "programmed specifically to solicit from California Residents."  Opp. at 2.  But, as Defendants contend, "[P]laintiff does not allege that One Technologies drafted the emails, controlled the content of the emails, chose the recipients of the emails, or obtained the domain names from which the emails were sent."  Motion at 4.  As another district court noted, "[c]ases across various district and circuit courts weigh heavily against finding purposeful availment when a defendant is not involved with the delivery or approval of communications received within a forum."  *Powers v. One Techs.*, LLC, No. 321-CV-00089-FDW-DCK, 2021 WL 3519282, at *3 (W.D.N.C. Aug. 10, 2021) (collecting cases, including *Durward*, 2019 WL 4930229).

For another, Plaintiff's allegations do not differ substantially from those in *Durward*, in which the Court found specific jurisdiction lacking over this same Defendant.  *See* Compl. ¶¶ 3, 5, 25; *Durward*, 2019 WL 4930229 at *3-*6.  Defendant again provides a declaration from its Compliance Manager explaining its email marketing process.  *See* Zittlau Decl. at ¶¶ 10-12.  The Compliance Manager states that publishers, not Defendant, "control all aspects of transmitting the emails and make fundamental decisions concerning the emails themselves, including choosing each email's recipient" and that "publishers arrange for the emails to be sent by others."  *Id.* ¶ 11.  Defendant "does not know, and has no control over, where the emails are sent or to whom, other than by prohibiting publishers from sending email advertisements to email

5

addresses associated with recipients who have requested to 'opt-out' of receiving emails advertising One Technologies." *Id.* ¶ 12.

Further, Defendant "would not be able to identify the location of any given email recipient because, unlike phone number area codes, email addresses are not connected to any particular geographic location," leaving Defendant unable to "differentiate California recipients from recipients in any other state." *Id.* In general, "nationwide marketing programs will not satisfy minimum contacts with a forum since there is no specific targeting of the forum state or its citizens." *Powers*, 2021 WL 3519282, at \*3; *see also Zoobuh, Inc. v. Williams*, No. 2:13-CV-791 TS, 2014 WL 7261786, at \*5 (D. Utah Dec. 18, 2014) (concluding no specific jurisdiction existed in part because defendant had no knowledge of where the third-party senders of the emails were sending the emails at issue)[2]; *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020) (same). Plaintiff's argument that 12 percent of Defendant's total revenue was obtained from California citizens further underscores the proportional, nationwide nature of Defendant's business, as roughly 12 percent of the United States population resides in California.

Plaintiff's additional arguments are unavailing. The fact that Defendant has had lawsuits filed against it in California or that it has responded to those lawsuits confers neither general nor specific jurisdiction over Defendant for this case – nor does Plaintiff provide any case law supporting this assertion. Plaintiff's contention that Defendant's website's interactive nature confers specific jurisdiction, relying on *Snowney v. Harrah's Entertainment, Inc.*, 35 Cal.4th 1054, 1058 (Cal. 2005), is also flawed, given that Plaintiff fails to allege a nexus between the operation of Defendant's website and the claims in this case – namely, the receipt of spam emails. No matter how "interactive" Defendant's website is, its operation cannot confer specific jurisdiction unless the claims "arise[] out of or relate[] to" its operation within the forum state. *Schwarzenegger*, 374 F.3d at 802. This is *especially* true when Plaintiff does not allege at any point that she visited Defendant's website or interacted with it at all; indeed, her claims concern solely the receipt of third-party emails. For this same reason, the Supreme Court's decision in *Ford Motor* – released since this Court's decision in *Durward* – does not change the outcome

---

[2] Plaintiff's attempt to distinguish *Zoobuh* fails. Plaintiff argues that jurisdiction was lacking because one of the defendants in that case "did not have any right of CONTROL of sending of the email, content or how the email list would be used." Opp. at 6. But that is exactly what Defendant establishes here, as discussed in the preceding paragraph. Plaintiff provides no allegations or evidence that Defendant has knowledge of where the third-party emails are directed.

6

here. Defendant's activities in California – operating a website accessible to Californians – do not give rise to Plaintiff's claims, which are based solely on the receipt of emails and the allegedly deceptive content thereof. Thus, the "strong relationship among the defendant, the forum, and the litigation," which is "the essential foundation of specific jurisdiction," has not been established by Plaintiff because the litigation here is – by the *nature* of Plaintiff's claims[3] – separated from the other two necessary ingredients. *Ford Motor*, 141 S. Ct. at 1028 (quotations omitted). Moreover, Plaintiff's allegations do not establish that Defendant "purposefully availed" itself of the privilege of operating in California, as Ford Motor had conceded it had in the forum states in that case. *Id.*

Thus, the Court would conclude that it lacks specific jurisdiction over Defendant for purposes of these claims and this case.

## IV. Conclusion

Based on the foregoing discussion, the Court would GRANT Defendant's motion to dismiss for lack of personal jurisdiction.

---

[3] For this reason, the Court would deny Plaintiff's request for jurisdictional discovery. Because Plaintiff's two claims are based *solely* on the receipt of emails and the allegedly deceptive content thereof, and because Plaintiff's allegations acknowledge that third parties send these emails and have control over their content, Plaintiff has failed to "make a colorable showing that the Court can exercise personal jurisdiction over the defendant." *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (internal quotation omitted). Any jurisdictional discovery would amount merely to a "fishing expedition," *Born v. Celtic Mktg. LLC*, 8:19-CV-01950-JLS-(ADSx), 2020 WL 3883273, at *5 (C.D. Cal. May 20, 2020) – one that is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).