1             UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5    CHERIE DIAZ,

6                        Plaintiff,

7        vs.                          Case No. CV 21-8571-GW

8    ONE TECHNOLOGIES, LLC, et al,

9                        Defendants.
     _____/

10

11

12                    REPORTER'S TRANSCRIPT OF
                        MOTION TO DISMISS
13                  THURSDAY, JANUARY 20, 2022
                            8:30 A.M.
14                   LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21    _____

22          TERRI A. HOURIGAN, CSR NO. 3838, CCRR
               FEDERAL OFFICIAL COURT REPORTER
23           350 WEST FIRST STREET, ROOM 4311
              LOS ANGELES, CALIFORNIA  90012
24                    (213) 894-2849

25

1        **APPEARANCES OF COUNSEL:**

2


3    **FOR THE PLAINTIFF:**

4        ANDERSON and JUNG
         BY:  JU-IN DANIEL JUNG
5        Attorney at Law
         21600 Oxnard Street, Suite 1030
6        Woodland Hills, California  91367


7    **FOR THE DEFENDANT:**

8        VENABLE LLP
9        BY: ARI N. ROTHMAN
         Attorney at Law
10       2049 Century Park East, Suite 2300
         Los Angeles, California  90067

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1            LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 20, 2022

2                              8:30 A.M.

3                              --oOo--

4

5            THE COURT:  Let me call the matter of *Diaz versus*

6  *One Technologies*.

7                 For the plaintiff, we have?

8            MR. JUNG:  Good morning, Your Honor.  Daniel Jung

9  for Cherie Diaz, Your Honor.

10           THE COURT:  For the defense?

11           MR. ROTHMAN:  Ari Rothman on behalf of One

12  Technologies.

13           THE COURT:  We are here for a motion to dismiss for

14  lack of personal jurisdiction.  I issued a tentative on this.

15  I presume both sides have seen it?

16           MR. JUNG:  Yes.

17           MR. ROTHMAN:  Yes.

18           THE COURT:  Does somebody want to argue something?

19           MR. JUNG:  Yes, Your Honor.  Good morning, first of

20  all, I did want to get some clarification.

21                 I wanted to discuss the case of *Snowney.*  There

22  seems to be some confusion regarding the two elements for

23  specific jurisdiction.  There is actually technically three

24  elements, but the third element is not really being argued so

25  much.

1           The first element is whether or not there is

2   purposeful availment, and the second element is whether or not

3   there is some sort of a relationship between the purposeful

4   availment towards the cause of action, and I do want to

5   emphasize "related."

6           Now under *Snowney*, Your Honor, this is where I'm

7   a little bit confused.

8           Under *Snowney*, I wanted to go ahead and emphasize

9   that the offending or infringing act was a telephone call, or

10  there was a surcharge not stated as to the final price.  This

11  was a violation of unfair fraudulent business practice.

12          For the first prong in *Snowney*, they found there

13  was purposeful availment based off of the website.  There was

14  no facts that the person -- that the plaintiff had seen the

15  website, knew about the website, or interacted with the website

16  in any way.

17          But purposeful availment in *Snowney* was found

18  based off just that website.

19          Now regarding *Thurston*, Your Honor, also,

20  *Thurston* had two facts for purposeful availment.

21          The first was the interactivity of the website,

22  and the second one they had nationwide advertising.

23          Now, because the website and the nationwide

24  advertising was open to California residents, the Court then

25  fell back on an additional set of facts and that was whether or

1    not a substantial amount of business was done in California in

2    terms of sales as well as percentage of sales.

3                    Our values way exceed those of *Thurston*, so we --

4    on my end, I clearly see that the first prong of purposeful

5    availment is clearly seen.

6                    Additionally, in *Ford*, Your Honor, under the new

7    case of *Ford* where the car was manufactured -- this was a

8    products liability case.  Your Honor, this is where the car was

9    bought and manufactured in a different state than where they

10   were suing upon, and they looked at what?  They looked at,

11   well, what was going on in the state that they were suing in.

12   Was there a lot of sales?  Was there service agreements?  And

13   absolutely there were.

14                   If you fall back on *Thurston*, *Thurston* said if

15   you have a website, that is interactive enough and it feels

16   like you are walking into a business, then that is enough to

17   show that there is purposeful availment on top of substantial

18   amount of sales.

19                   So for the first prong, to me, there is no way

20   around it.

21                   Now, for the second prong, Your Honor, which is a

22   little bit more interesting, is that you do need to show it

23   relates to the cause of action.  Well then, you have got to

24   fall back on *Snowney*.  How did *Snowney* relate the telephone

25   call to the website?

1          Well, they said they are both types of

2    advertisements -- they specifically said they are both types of

3    advertisements that support the business of someone staying at

4    that hotel.

5          What about *Thurston*?  How did *Thurston* go ahead

6    and create an agreement between the nationwide advertising as

7    well as interactive website?  They said it was obvious, because

8    they are a website business just like our case.  It's a website

9    business.

10          Additionally, under *Ford*, how did they find the

11    third prong?  They found the third prong by looking at whether

12    or not there were services rendered in that state as well as

13    whether or not there is a lot of advertising in that state.

14          And if you fall back on *Thurston*, *Thurston*

15    specifically said when they looked at the nationwide

16    advertising, how can you possibly say that you do not know that

17    you're advertising in California when you have $333,000 during

18    the $35,000 of sales in the state of California.  You know that

19    the advertising is reaching there if it's nationwide.

20          Additionally, with our case, we're not talking

21    about 330 -- 320- to $375,000 a year, we're talking about

22    16.6 million where they have 144,000 Californians that are

23    members -- members of a service.  They are not buying product,

24    this is a continuing relationship.

25          So the first prong and the second prong are

1   obviously meant in that regard.

2            Now if they want to make the argument, and this

3   is a very important distinction as well, because the Court is

4   relying on *Zoobuh*.

5            There is a difference when you are looking at

6   agency and independent contractor and vicarious liability,

7   there is a difference between not having any control and in

8   *Zoobu* you are talking about people that sold lists of e-mails.

9   They have zero control over what the person that hires the

10  marketing agency decides to do with that list as well as who

11  they send it to.

12           This is very different in terms of when you have

13  a business hiring a third-party independent marketing agency

14  that then gives them -- delegates the duty to be able to send

15  that to any additional state as well as the content of that.

16           And on its face, when you are doing an

17  advertisement, Your Honor, on its face, you are delegating that

18  that advertisement is going to be correct, because under the

19  case of *Statens versus Yamaha*, *Culver* versus -- which is a 1981

20  Oklahoma case, the manifestation may be made directly to a

21  third person or to a committee by signs or advertising.

22           But a parent authority exists only to the stuff

23  that is reasonable for the third person dealing with agents who

24  believe that the agent is authorized to do so.

25           When you are looking at an advertisement by a

1  third-party marketing agency, whether it's a coupon code, the

2  price of a bag, you believe that that is and that was meant to

3  be sent by the person that went ahead and hired that agency to

4  send it to.

5          They are delegating that duty.  Them saying they

6  don't have control of the e-mails is not correct because they

7  delegated that duty to a marketing agency.

8          THE COURT:  Well, let me hear a response from the

9  defense.

10          MR. ROTHMAN:  Thank you, Your Honor.  Taking the

11  arguments in turn, we believe that the Court properly applied

12  *Snowney*, *Thurston*, *Ford* and *Zoobu*.

13          As to *Snowney*, the issue in that case was whether

14  or not disclosures on the website gave rise to cause of action

15  with persons in California with whom the defendant had an

16  established business relationship.  The website was the issue

17  in that case.

18          In *Thurston*, that is an ADA case, whether or not

19  the website was accessible there.  The plaintiff there had to

20  make the website at issue because it was the website that was

21  the central -- or gave rise to the central claim in the case.

22          This case, as the Court noted and as we have

23  noted in this case in *Durward*, doesn't have anything to do with

24  any website.

25          Plaintiff never went to a website, plaintiff

1    doesn't allege that she went to any website.  There is no

2    website conduct that could possibly give rise to any aspect of

3    plaintiff's cause of action.

4              Her cause of action relates solely to the receipt

5    of e-mails that she claims violates California Business and

6    Professions Code 1729.5, so *Snowney* and *Thurston* don't apply.

7              Likewise, in *Ford*, and we have noted that as

8    well, *Ford* doesn't change the analysis.

9              *Ford*, on the one hand says that *Ford* didn't

10   contest purposeful availment, so the Supreme Court didn't

11   address purposeful availment in that case, and in terms of the

12   activities and the cars that gave rise to the cause of action

13   that the plaintiffs allege there, those were in the foreign

14   state as well.  It just doesn't apply.

15             In terms of the sales information, both -- so

16   what the plaintiff did in this case, is swept in the sales

17   information from *Durward* and what *Durward* found -- what this

18   Court found in *Durward*, and what we argued there and still

19   remains true, that the percentage of sales that the company

20   derived from California residents is less than the percentage

21   of Californians overall in the United States population.

22             So, on that basis, if we were specifically

23   targeting Californians, you would expect the sales to be at

24   least as much as the US population, and here, it's less.

25             So the sales information now, it doesn't matter,

1    you have to look at the percentages which we provided, and of

2    course, plaintiff didn't engage the company in any sale or any

3    transaction, so the sales information isn't even relevant.  If

4    it were, it wouldn't show purposeful availment or direction

5    into California.

6              In terms of *Zoobu*, we continue to believe that

7    the Court properly cited that case and that we properly

8    characterized it.

9              The *Zoobu* Court's analysis turns on its finding

10   that the defendant had no involvement with or control over the

11   origination, approval, or delivery of the e-mails as it does

12   not -- and this is a quote from the case:  Throughout the

13   content of the e-mail sent by the publishers review or approve

14   them nowhere, open paren, i.e. the location or recipient, close

15   paren, the publishers sending e-mails or decide the customers

16   to whom the publishers should send the e-mails.  That is on

17   page 5 of the decision.

18             And we have submitted a declaration, both in this

19   case and in *Durward* establishing those same facts.

20             So from our perspective if we are going to look

21   at agency, the things that matter are the things that the

22   Courts find in cases involving transmission, alleged

23   transmission of unlawful e-mails, and that involves where the

24   e-mails go, who they are supposed to go to, and actually

25   drafting them.  We don't have any control over that, and that

1  it is unrefuted.

2          THE COURT:  All right.  Anything else from either

3  side?

4          MR. JUNG:  Again, Your Honor.  He just stated that

5  the issuance in *Snowney* was the website.  That is patently

6  incorrect.

7          The issue of *Snowney* was a telephone call

8  regarding a surcharge.  That is patently 100 percent incorrect.

9          The website was not an issue of the case, the

10  only reason the website was an issue in the case is because

11  under the first prong, you don't look at the cause of action,

12  you look at the totality of the circumstances.  You look to see

13  if it's reasonable whether or not a person is going to be

14  believed that they are going to be caught into the case, so

15  that is patently incorrect.

16          Additionally, *Zoobu*, yeah, they didn't have

17  control because there were three defendants in *Zoobu*.  The

18  three defendants in *Zoobu* were the people that hired the

19  marketing agency to send the e-mails, the marketing agency that

20  sent the e-mails, and then *Zoobu* had an additional defendant

21  which *Zoobu* was based off of, which was the person that sold

22  the list.

23          Of course, the person that sells the list of

24  e-mails doesn't have control what you are going to do with the

25  list.  That is commonsense.

 1                    What about those other two defendants in *Zoobu*

 2    that didn't join in?  Why didn't they join in as defendants,

 3    and say well, we don't have any jurisdiction.

 4                    What about the person that hired the marketing

 5    agency that sent the e-mails, which is who they are.

 6                    One Technology is a person hiring the marketing

 7    agency.  It's completely --

 8                    THE COURT:  Let me stop both sides.  I understand

 9    the position of both sides.  I will think about it a little bit

10    more and see if it has caused me to change my tentative.

11                    I think I understand the position of both sides.

12    Anything else?

13                    MR. JUNG:  Yes, Your Honor, a couple of other

14    things.

15                    This Court did refer to *Durward* and we would like

16    the Court to also look at *William Silverstein* that is exactly

17    on point.

18                    Additionally, we would also like the Court to

19    look at *West Core versus Superior Court of Appeals of*

20    *California* --

21                    THE COURT:  Let me stop you.  I have looked at all

22    of the cases that you have submitted.

23                    Are you submitting new cases?

24                    MR. JUNG:  Well, Your Honor, the reason I'm

25    submitting this case is based off of the comment made by --

1    regarding whether or not -- you know, there was a comment made

2    at the previous hearing by someone that said, well, what's the

3    big deal, you can just file it in the Texas Courts.

4              *West Core versus Superior Court* goes completely

5    against that.

6              When this Court finds there is actual -- this

7    Court found that there is actual damages in this case, even

8    though we claim there was no actual damages in this case.  They

9    said that the legislation was so powerful that actual damages

10   must be imputed.

11             Now, we're making this -- we're making the

12   argument of you know what, you know what -- but you can file it

13   in Texas.

14             In the Court case in *West Core versus Superior*

15   *Court*, they specifically say otherwise, let me quote:

16   Otherwise, those businesses that can conduct extensive

17   commercial activity in other jurisdiction primarily by

18   telephone or through mails would tend to be immunized from

19   suits from whom they do business and any but their home

20   jurisdiction.

21             The Court specifically stated no, when they are

22   conducting business in our state -- and additionally, I would

23   like to ask counsel, well, if you are going to go based off of

24   percentages, what were the percentages in *Thurston*, because the

25   percentage was 8 percent.  Our amount of business was 10 to

1    11 percent.

2            So if they are going to say, well, our business

3    for *Thurston* was only -- you know if we have to go based off

4    percentages, well, *Thurston* was 8 percent.

5            THE COURT:  All right.  Anything else from either

6    side?

7            MR. ROTHMAN:  Just briefly, Your Honor.  If the

8    Court is going to go back and look at this, I would just point

9    out that *Snowney* at pages 1064 and 1065, that's where the

10   discussion resides around the existence of the website failing

11   to provide adequate disclosures that were the subject of the

12   lawsuit, so that case involves the lawsuit.

13           And our second position is -- I'm not sure I

14   followed the logic or the citations in the cases that were just

15   identified, but the on-point authorities are the ones that we

16   cited and that the Court has identified in the ruling involving

17   the transmission of e-mails and other communications, including

18   what a similar Court found in North Carolina that the Court

19   cited *Powers versus One Technology*.

20           It's not an undeveloped area of law, it's

21   becoming pretty uniform, and to go outside of those authorities

22   based on the ones that are being described now just wouldn't

23   seem appropriate, in our view.

24           MR. JUNG:  Again, Your Honor, the *Ford* case is not

25   binding.

 1            Additionally, we cited the cases that the Court

 2    ignored that were also not binding, but do have some persuasive

 3    influence on the Court.

 4            Additionally, Your Honor, in terms of what he's

 5    stating regarding those citations under *Snowney*, this is what

 6    he did before and this is why it gets confusing.

 7            He's citing cases after the Court has stated,

 8    even if the website was not enough, they did these additional

 9    things.

10            When they are talking about the nexus agreement,

11    Your Honor, when they are talking about -- not even nexus

12    because nexus was found to be too stringent, so they went to a

13    relatedness argument.  They said it is related -- all you need

14    to show is that it's related to.

15            When they talk about related to, they say

16    advertisements or websites towards the conclusion.  There is a

17    specific paragraph, and I could read it, because I have it in

18    my notes if you want me to, Your Honor.

19            THE COURT:  Let me stop counsel.  I have read the

20    cases.

21            I understand, you know, what your arguments are.

22    Let me think about it some more, but I understand what you are

23    arguing, all right?

24            Gentlemen, have a nice day.

25            MR. JUNG:  Thank you, Your Honor.

1          MR. ROTHMAN:  Thank you, Your Honor.

2

3          (The proceedings concluded at 10:10 a.m.)

4                         *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6          I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:  February 25, 2022

17

18

19                        /s/ TERRI A. HOURIGAN

20   _____
                     TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                       Federal Official Court Reporter

22

23

24

25

**$**

$333,000 [1] - 6:17
$35,000 [1] - 6:18
$375,000 [1] - 6:21

**/**

/s [1] - 17:19

**1**

10 [1] - 13:25
100 [1] - 11:8
1030 [1] - 2:5
1064 [1] - 14:9
1065 [1] - 14:9
10:10 [1] - 16:3
11 [1] - 14:1
144,000 [1] - 6:22
16.6 [1] - 6:22
1729.5 [1] - 9:6
1981 [1] - 7:19

**2**

20 [2] - 1:13, 3:1
2022 [3] - 1:13, 3:1, 17:16
2049 [1] - 2:10
21-8571-GW [1] - 1:7
213 [1] - 1:24
21600 [1] - 2:5
2300 [1] - 2:10
25 [1] - 17:16
28 [1] - 17:9

**3**

320 [1] - 6:21
330 [1] - 6:21
350 [1] - 1:23
3838 [2] - 1:22, 17:20

**4**

4311 [1] - 1:23

**5**

5 [1] - 10:17

**7**

753 [1] - 17:9

**8**

8 [2] - 13:25, 14:4
894-2849 [1] - 1:24

**8:30** [2] - 1:13, 3:2

**9**

90012 [1] - 1:23
90067 [1] - 2:10
91367 [1] - 2:6

**A**

a.m - 16:3
A.M [2] - 1:13, 3:2
able [1] - 7:14
above-entitled [1] -
17:12
absolutely [1] - 5:13
accessible [1] - 8:19
act [1] - 4:9
action [7] - 4:4, 5:23,
8:14, 9:3, 9:4, 9:12,
11:11
activities [1] - 9:12
activity [1] - 13:17
actual [4] - 13:6,
13:7, 13:8, 13:9
ADA [1] - 8:18
additional [4] - 4:25,
7:15, 11:20, 15:8
additionally [8] - 5:6,
6:10, 6:20, 11:16,
12:18, 13:22, 15:1,
15:4
address [1] - 9:11
adequate [1] - 14:11
advertisement [3] -
7:17, 7:18, 7:25
advertisements [3] -
6:2, 6:3, 15:16
advertising [8] -
4:22, 4:24, 6:6, 6:13,
6:16, 6:17, 6:19, 7:21
agency [11] - 7:6,
7:10, 7:13, 8:1, 8:3,
8:7, 10:21, 11:19,
12:5, 12:7
agent [1] - 7:24
agents [1] - 7:23
agreement [2] - 6:6,
15:10
agreements [1] -
5:12
ahead [3] - 4:8, 6:5,
8:3
al [1] - 1:8
allege [2] - 9:1, 9:13
alleged [1] - 10:22
amount [3] - 5:1,
5:18, 13:25
analysis [2] - 9:8,
10:9

ANDERSON [1] - 2:4
Angeles [1] - 2:10
ANGELES [4] - 1:14,
1:23, 3:1, 17:3
Appeals [1] - 12:19
APPEARANCES [1] -
2:1
applied [1] - 8:11
apply [2] - 9:6, 9:14
appropriate [1] -
14:23
approval [1] - 10:11
approve [1] - 10:13
area [1] - 14:20
argue [1] - 3:18
argued [2] - 3:24,
9:18
arguing [1] - 15:23
argument [3] - 7:2,
13:12, 15:13
arguments [2] -
8:11, 15:21
aRl [1] - 2:9
Ari [1] - 3:11
aspect [1] - 9:2
Attorney [2] - 2:5,
2:9
authorities [2] -
14:15, 14:21
authority [1] - 7:22
authorized [1] - 7:24
availment [10] - 4:2,
4:4, 4:13, 4:17, 4:20,
5:5, 5:17, 9:10, 9:11,
10:4

**B**

bag [1] - 8:2
based [7] - 4:13,
4:18, 11:21, 12:25,
13:23, 14:3, 14:22
basis [1] - 9:22
becoming [1] - 14:21
behalf [1] - 3:11
between [3] - 4:3,
6:6, 7:7
big [1] - 13:3
binding [2] - 14:25,
15:2
bit [3] - 4:7, 5:22,
12:9
bought [1] - 5:9
briefly [1] - 14:7
Business [1] - 9:5
business [12] - 4:11,
5:1, 5:16, 6:3, 6:8,
6:9, 7:13, 8:16, 13:19,
13:22, 13:25, 14:2
businesses [1] -

13:16
buying [1] - 6:23
BY [2] - 2:4, 2:9

**C**

California [12] - 2:6,
2:10, 4:24, 5:1, 6:17,
6:18, 8:15, 9:5, 9:20,
10:5, 12:20, 17:8
CALIFORNIA [5] -
1:2, 1:14, 1:23, 3:1,
17:4
Californians [3] -
6:22, 9:21, 9:23
car [2] - 5:7, 5:8
Carolina [1] - 14:18
cars [1] - 9:12
case [27] - 3:21, 5:7,
5:8, 6:8, 6:20, 7:19,
7:20, 8:13, 8:17, 8:18,
8:21, 8:22, 8:23, 9:11,
9:16, 10:7, 10:12,
10:19, 11:9, 11:10,
11:14, 12:25, 13:7,
13:8, 13:14, 14:12,
14:24
Case [1] - 1:7
cases [7] - 10:22,
12:22, 12:23, 14:14,
15:1, 15:7, 15:20
caught [1] - 11:14
caused [1] - 12:10
CCRR [1] - 1:22
Central [1] - 17:8
CENTRAL [1] - 1:2
central [1] - 8:21
Century [1] - 2:10
CERTIFICATE [1] -
17:1
certify [1] - 17:8
change [2] - 9:8,
12:10
characterized [1] -
10:8
Cherie - 3:9
CHERIE [1] - 1:5
circumstances [1] -
11:12
citations [1] - 14:14,
15:5
cited [4] - 10:7,
14:16, 14:19, 15:1
citing [1] - 15:7
claim [2] - 8:21, 13:8
claims [1] - 9:5
clarification [1] -
3:20
clearly [2] - 5:4, 5:5
close [1] - 10:14

code [1] - 8:1
Code [2] - 9:6, 17:9
comment [2] - 12:25,
13:1
commercial [1] -
13:17
committee [1] - 7:21
commonsense [1] -
11:25
communications [1]
- 14:17
company [2] - 9:19,
10:2
completely [2] -
12:7, 13:4
concluded [1] - 16:3
conclusion [1] -
15:16
conduct [2] - 9:2,
13:16
conducting [1] -
13:22
conference [1] -
17:13
conformance [1] -
17:13
confused [1] - 4:7
confusing [1] - 15:6
confusion [1] - 3:22
content [2] - 7:15,
10:13
contest [1] - 9:10
continue [1] - 10:6
continuing [1] - 6:24
contractor [1] - 7:6
control [7] - 7:7, 7:9,
8:6, 10:10, 10:25,
11:17, 11:24
Core [3] - 12:19,
13:4, 13:14
correct [3] - 7:18,
8:6, 17:10
COUNSEL [1] - 2:1
counsel [2] - 13:23,
15:19
COUNTY [1] - 17:3
couple [1] - 12:13
coupon [1] - 8:1
course [1] - 10:2,
11:23
COURT [12] - 1:1,
1:22, 3:5, 3:10, 3:13,
3:18, 8:8, 11:2, 12:8,
12:21, 14:5, 15:19
Court [27] - 4:24, 7:3,
8:11, 8:22, 9:10, 9:18,
10:7, 12:15, 12:16,
12:18, 12:19, 13:4,
13:6, 13:7, 13:14,
13:15, 13:21, 14:8,

14:16, 14:18, 15:1,
15:3, 15:7, 17:7,
17:20
  **Court's** [1] - 10:9
  **Courts** [2] - 10:22,
13:3
  **create** [1] - 6:6
  **CRR** [1] - 17:20
  **CSR** [2] - 1:22, 17:20
  **Culver** [1] - 7:19
  **customers** [1] -
10:15
  **cV** [1] - 1:7

## D

  **damages** [3] - 13:7,
13:8, 13:9
  **DANIEL** [1] - 2:4
  **Daniel** [1] - 3:8
  **Date** [1] - 17:16
  **deal** [1] - 13:3
  **dealing** [1] - 7:23
  **decide** [1] - 10:15
  **decides** [1] - 7:10
  **decision** [1] - 10:17
  **declaration** [1] -
10:18
  **DEFENDANT** [1] -
2:7
  **defendant** [3] - 8:15,
10:10, 11:20
  **Defendants** [1] - 1:9
  **defendants** [4] -
11:17, 11:18, 12:1,
12:2
  **defense** [2] - 3:10,
8:9
  **delegated** [1] - 8:7
  **delegates** [1] - 7:14
  **delegating** [2] - 7:17,
8:5
  **delivery** [1] - 10:11
  **derived** [1] - 9:20
  **described** [1] - 14:22
  **Diaz** [2] - 3:5, 3:9
  **DIAZ** [1] - 1:5
  **difference** [2] - 7:5,
7:7
  **different** [2] - 5:9,
7:12
  **direction** [1] - 10:4
  **directly** [1] - 7:20
  **disclosures** [2] -
8:14, 14:11
  **discuss** [1] - 3:21
  **discussion** [1] -
14:10
  **dismiss** [1] - 3:13
  **distinction** [1] - 7:3

  **District** [2] - 17:7,
17:8
  **DISTRICT** [3] - 1:1,
1:2, 1:3
  **DIVISION** [1] - 1:2
  **done** [1] - 5:1
  **drafting** [1] - 10:25
  **during** [1] - 6:17
  **Durward** [6] - 8:23,
9:17, 9:18, 10:19,
12:15
  **duty** [3] - 7:14, 8:5,
8:7

## E

  **e-mail** [1] - 10:13
  **e-mails** [1] - 7:8,
8:6, 9:5, 10:11, 10:15,
10:16, 10:23, 10:24,
11:19, 11:20, 11:24,
12:5, 14:17
  **East** [1] - 2:10
  **either** [2] - 11:2, 14:5
  **element** [3] - 3:24,
4:1, 4:2
  **elements** [2] - 3:22,
3:24
  **emphasize** [2] - 4:5,
4:8
  **end** [1] - 5:4
  **engage** [1] - 10:2
  **entitled** [1] - 17:12
  **established** [1] -
8:16
  **establishing** [1] -
10:19
  **et** [1] - 1:8
  **exactly** [1] - 12:16
  **exceed** [1] - 5:3
  **existence** [1] - 14:10
  **exists** [1] - 7:22
  **expect** [1] - 9:23
  **extensive** [1] - 13:16

## F

  **face** [2] - 7:16, 7:17
  **facts** [4] - 4:14, 4:20,
4:25, 10:19
  **failing** [1] - 14:10
  **fall** [3] - 5:14, 5:24,
6:14
  **February** [1] - 17:16
  **FEDERAL** [1] - 1:22
  **Federal** [2] - 17:6,
17:20
  **fell** [1] - 4:25
  **file** [2] - 13:3, 13:12
  **final** [1] - 4:10

  **first** [8] - 3:19, 4:1,
4:12, 4:21, 5:4, 5:19,
6:25, 11:11
  **FIRST** [1] - 1:23
  **followed** [1] - 14:14
  **FOR** [2] - 2:3, 2:7
  **Ford** [9] - 5:6, 5:7,
6:10, 8:12, 9:7, 9:8,
9:9, 14:24
  **foregoing** [1] - 17:10
  **foreign** [1] - 9:13
  **format** [1] - 17:12
  **fraudulent** [1] - 4:11

## G

  **gentlemen** [1] -
15:24
  **GEORGE** [1] - 1:3

## H

  **hand** [1] - 9:9
  **hear** [1] - 8:8
  **hearing** [1] - 13:2
  **held** [1] - 7:11
  **hereby** [1] - 17:8
  **Hills** [1] - 2:6
  **hired** [3] - 8:3, 11:18,
12:4
  **hires** [1] - 7:9
  **hiring** [2] - 7:13, 12:6
  **home** [1] - 13:19
  **Honor** [20] - 3:8, 3:9,
3:19, 4:6, 4:19, 5:6,
5:8, 5:21, 7:17, 8:10,
11:4, 12:13, 12:24,
14:7, 14:24, 15:4,
15:11, 15:18, 15:25,
16:1
  **HONORABLE** [1] -
1:3
  **hotel** [1] - 6:4
  **HOURIGAN** [4] -
1:22, 17:6, 17:19,
17:20

## I

  **i.e** [1] - 10:14
  **identified** [2] - 14:15,
14:16
  **ignored** [1] - 15:2
  **immunized** [1] -
13:18
  **important** [1] - 7:3
  **imputed** [1] - 13:10
  **IN** [1] - 2:4
  **including** [1] - 14:17
  **incorrect** [1] - 11:6,

11:8, 11:15
  **independent** [2] -
7:6, 7:13
  **influence** [1] - 15:3
  **information** [4] -
9:15, 9:17, 9:25, 10:3
  **infringing** [1] - 4:9
  **interacted** [1] - 4:15
  **interactive** [2] - 5:15,
6:7
  **interactivity** [1] -
4:21
  **interesting** [1] - 5:22
  **involvement** [1] -
10:10
  **involves** [2] - 10:23,
14:12
  **involving** [2] - 10:22,
14:16
  **issuance** [1] - 11:5
  **issue** [6] - 8:13, 8:16,
8:20, 11:7, 11:9,
11:10
  **issued** [1] - 3:14

## J

  **JANUARY** [2] - 1:13,
3:1
  **join** [2] - 12:2
  **JU** [1] - 2:4
  **JU-IN** [1] - 2:4
  **JUDGE** [1] - 1:3
  **judicial** [1] - 17:13
  **Jung** [1] - 3:8
  **JUNG** [10] - 2:4, 2:4,
3:8, 3:16, 3:19, 11:4,
12:13, 12:24, 14:24,
15:25
  **jurisdiction** [5] -
3:14, 3:23, 12:3,
13:17, 13:20

## L

  **lack** [1] - 3:14
  **law** [1] - 14:20
  **Law** [2] - 2:5, 2:9
  **lawsuit** [2] - 14:12
  **least** [1] - 9:24
  **legislation** [1] - 13:9
  **less** [2] - 9:20, 9:24
  **liability** [2] - 5:8, 7:6
  **likewise** [1] - 9:7
  **list** [4] - 7:10, 11:22,
11:23, 11:25
  **lists** [1] - 7:8
  **LLC** [1] - 1:8
  **LLP** [1] - 2:8
  **location** [1] - 10:14

  **logic** [1] - 14:14
  **look** [8] - 10:1,
10:20, 11:11, 11:12,
12:16, 12:19, 14:8
  **looked** [4] - 5:10,
6:15, 12:21
  **looking** [3] - 6:11,
7:5, 7:25
  **Los** [1] - 2:10
  **LOS** [4] - 1:14, 1:23,
3:1, 17:3

## M

  **mail** [1] - 10:13
  **mails** [14] - 7:8, 8:6,
9:5, 10:11, 10:15,
10:16, 10:23, 10:24,
11:19, 11:20, 11:24,
12:5, 13:18, 14:17
  **manifestation** [1] -
7:20
  **manufactured** [2] -
5:7, 5:9
  **marketing** [8] - 7:10,
7:13, 8:1, 8:7, 11:19,
12:4, 12:6
  **matter** [4] - 3:5, 9:25,
10:21, 17:12
  **meant** [2] - 7:1, 8:2
  **members** [2] - 6:23
  **million** [1] - 6:22
  **morning** [2] - 3:8,
3:19
  **motion** [1] - 3:13
  **MR** [13] - 3:8, 3:11,
3:16, 3:17, 3:19, 8:10,
11:4, 12:13, 12:24,
14:7, 14:24, 15:25,
16:1
  **must** [1] - 13:10

## N

  **nationwide** [5] -
4:22, 4:23, 6:6, 6:15,
6:19
  **need** [2] - 5:22,
15:13
  **never** [1] - 8:25
  **new** [2] - 5:6, 12:23
  **nexus** [3] - 15:10,
15:11, 15:12
  **nice** [1] - 15:24
  **NO** [2] - 1:22, 17:20
  **North** [1] - 14:18
  **noted** [3] - 8:22,
8:23, 9:7
  **notes** [1] - 15:18
  **nowhere** [1] - 10:14

**O**

obvious [1] - 6:7
obviously [1] - 7:1
OF [6] - 1:2, 1:12, 2:1, 17:1, 17:3, 17:4
offending [1] - 4:9
Official [2] - 17:6, 17:20
OFFICIAL [2] - 1:22, 17:1
Oklahoma [1] - 7:20
on-point [1] - 14:15
one [3] - 4:22, 9:9, 12:6
ONE [1] - 1:8
One [3] - 3:6, 3:11, 14:19
ones [2] - 14:15, 14:22
oOo [1] - 3:3
open [2] - 4:24, 10:14
origination [1] - 10:11
otherwise [2] - 13:15, 13:16
outside [1] - 14:21
overall [1] - 9:21
Oxnard [1] - 2:5

**P**

page [2] - 10:17, 17:12
pages [1] - 14:9
paragraph [1] - 15:17
paren [2] - 10:14, 10:15
parent [1] - 7:22
Park [1] - 2:10
party [2] - 7:13, 8:1
patently [3] - 11:5, 11:8, 11:15
people [2] - 7:8, 11:18
percent [4] - 11:8, 13:25, 14:1, 14:4
percentage [4] - 5:2, 9:19, 9:20, 13:25
percentages [4] - 10:1, 13:24, 14:4
person [10] - 4:14, 7:9, 7:21, 7:23, 8:3, 11:13, 11:21, 11:23, 12:4, 12:6
personal [1] - 3:14
persons [1] - 8:15
perspective [1] -

10:20
persuasive [1] - 15:2
Plaintiff [1] - 1:6
plaintiff [7] - 3:7, 4:14, 8:19, 8:25, 9:16, 10:2
PLAINTIFF [1] - 2:3
plaintiff's [1] - 9:3
plaintiffs [1] - 9:13
point [3] - 12:17, 14:8, 14:15
population [2] - 9:21, 9:24
position [3] - 12:9, 12:11, 14:13
possibly [2] - 6:16, 9:2
powerful [1] - 13:9
Powers [1] - 14:19
practice [1] - 4:11
presume [1] - 3:15
pretty [1] - 14:21
previous [1] - 13:2
price [2] - 4:10, 8:2
primarily [1] - 13:17
proceedings [2] - 16:3, 17:11
product [1] - 6:23
products [1] - 5:8
Professions [1] - 9:6
prong [9] - 4:12, 5:4, 5:19, 5:21, 6:11, 6:25, 11:11
properly [3] - 8:11, 10:7
provide [1] - 14:11
provided [1] - 10:1
publishers [3] - 10:13, 10:15, 10:16
purposeful [10] - 4:2, 4:3, 4:13, 4:17, 4:20, 5:4, 5:17, 9:10, 9:11, 10:4
pursuant [1] - 17:9

**Q**

quote [2] - 10:12, 13:15

**R**

reaching [1] - 6:19
read [2] - 15:17, 15:19
really [1] - 3:24
Realtime [1] - 17:6
reason [2] - 11:10, 12:24
reasonable [2] -

7:23, 11:13
receipt [1] - 9:4
recipient [1] - 10:14
refer [1] - 12:15
regard [1] - 7:1
regarding [5] - 3:22, 4:19, 11:8, 13:1, 15:5
regulations [1] - 17:13
relate [1] - 5:24
related [4] - 4:5, 15:13, 15:14, 15:15
relatedness [1] - 15:13
relates [2] - 5:23, 9:4
relationship [3] - 4:3, 6:24, 8:16
relevant [1] - 10:3
relying [1] - 7:4
remains [1] - 9:19
rendered [1] - 6:12
reported [1] - 17:11
REPORTER [2] - 1:22, 17:1
Reporter [2] - 17:7, 17:20
REPORTER'S [1] - 1:12
residents [2] - 4:24, 9:20
resides [1] - 14:10
response [1] - 8:8
review [1] - 10:13
rise [4] - 8:14, 8:21, 9:2, 9:12
ROOM [1] - 1:23
ROTHMAN [6] - 2:9, 3:11, 3:17, 8:10, 14:7, 16:1
Rothman [1] - 3:11
RPR [1] - 17:20
ruling [1] - 14:16

**S**

sale [1] - 10:2
sales [11] - 5:2, 5:12, 5:18, 6:18, 9:15, 9:16, 9:19, 9:23, 9:25, 10:3
second [5] - 4:2, 4:22, 5:21, 6:25, 14:13
Section [1] - 17:9
see [3] - 5:4, 11:12, 12:10
seem [1] - 14:23
sells [1] - 11:23
send [5] - 7:11, 7:14, 8:4, 10:16, 11:19
sending [1] - 10:15

sent [4] - 8:3, 10:13, 11:20, 12:5
service [2] - 5:12, 6:23
services [1] - 6:12
set [1] - 4:25
show [4] - 5:17, 5:22, 10:4, 15:14
side [2] - 11:3, 14:6
sides [4] - 3:15, 12:8, 12:9, 12:11
signs [1] - 7:21
Silverstein [1] - 12:16
similar [1] - 14:18
Snowney [14] - 3:21, 4:6, 4:8, 4:12, 4:17, 5:24, 8:12, 8:13, 9:6, 11:5, 11:7, 14:9, 15:5
sold [2] - 7:8, 11:21
solely [1] - 9:4
someone [2] - 6:3, 13:2
sort [1] - 4:3
specific [2] - 3:23, 15:17
specifically [5] - 6:2, 6:15, 9:22, 13:15, 13:21
STATE [1] - 17:4
state [8] - 5:9, 5:11, 6:12, 6:13, 6:18, 7:15, 9:14, 13:22
Statens [1] - 7:19
STATES [1] - 1:1
States [4] - 9:21, 17:7, 17:9, 17:14
stating [1] - 15:5
staying [1] - 6:3
stenographically [1] - 17:11
still [1] - 9:18
stop [2] - 12:8, 12:21, 15:19
Street [1] - 2:5
STREET [1] - 1:23
stringent [1] - 15:12
stuff [1] - 7:22
subject [1] - 14:11
submitted [2] - 10:18, 12:22
submitting [2] - 12:23, 12:25
substantial [2] - 5:1, 5:17
suing [2] - 5:10, 5:11
Suite [2] - 2:5, 2:10
suits [1] - 13:19
Superior [3] - 12:19, 13:4, 13:14

support [1] - 6:3
supposed [1] - 10:24
Supreme [1] - 9:10
surcharge [2] - 4:10, 11:8
swept [1] - 9:16

**T**

targeting [1] - 9:23
technically [1] - 3:23
Technologies [2] - 3:6, 3:12
TECHNOLOGIES [1] - 1:8
Technology [2] - 12:6, 14:19
telephone [4] - 4:9, 5:24, 11:7, 13:18
tend [1] - 13:18
tentative [2] - 3:14, 12:10
terms [6] - 5:2, 7:12, 9:11, 9:15, 10:6, 15:4
TERRI [4] - 1:22, 17:6, 17:19, 17:20
Texas [2] - 13:3, 13:13
THE [12] - 2:3, 2:7, 3:5, 3:10, 3:13, 3:18, 8:8, 11:2, 12:8, 12:21, 14:5, 15:19
third [7] - 3:24, 6:11, 7:13, 7:21, 7:23, 8:1
third-party [2] - 7:13, 8:1
three [3] - 3:23, 11:17, 11:18
throughout [1] - 10:12
THURSDAY [2] - 1:13, 3:1
Thurston [15] - 4:19, 4:20, 5:3, 5:14, 6:5, 6:14, 8:12, 8:18, 9:6, 13:24, 14:3, 14:4
Title [1] - 17:9
top [1] - 5:17
totality [1] - 11:12
towards [2] - 4:4, 15:16
transaction [1] - 10:3
TRANSCRIPT [1] - 1:12
transcript [2] - 17:10, 17:12
transmission [3] - 10:22, 10:23, 14:17
true [2] - 9:19, 17:10

UNITED STATES DISTRICT COURT

**turn** [1] - 8:11
**turns** [1] - 10:9
**two** [3] - 3:22, 4:20, 12:1
**types** [2] - 6:1, 6:2

## U

**U.S** [1] - 1:3
**under** [7] - 4:6, 4:8, 5:6, 6:10, 7:18, 11:11, 15:5
**undeveloped** [1] - 14:20
**unfair** [1] - 4:11
**uniform** [1] - 14:21
**United** [4] - 9:21, 17:7, 17:9, 17:14
**UNITED** [1] - 1:1
**unlawful** [1] - 10:23
**unrefuted** [1] - 11:1
**US** [1] - 9:24

## V

**values** [1] - 5:3
**VENABLE** [1] - 2:8
**versus** [7] - 3:5, 7:19, 12:19, 13:4, 13:14, 14:19
**vicarious** [1] - 7:6
**view** [1] - 14:23
**violates** [1] - 9:5
**violation** [1] - 4:11
**vs** [1] - 1:7

## W

**walking** [1] - 5:16
**website** [26] - 4:13, 4:15, 4:18, 4:21, 4:23, 5:15, 5:25, 6:7, 6:8, 8:14, 8:16, 8:19, 8:20, 8:24, 8:25, 9:1, 9:2, 11:5, 11:9, 11:10, 14:10, 15:8
**websites** [1] - 15:16
**WEST** [1] - 1:23
**West** [3] - 12:19, 13:4, 13:14
**WESTERN** [1] - 1:2
**William** [1] - 12:16
**Woodland** [1] - 2:6
**WU** [1] - 1:3

## Y

**Yamaha** [1] - 7:19
**year** [1] - 6:21

## Z

**zero** [1] - 7:9
**Zoobu** [10] - 7:8, 8:12, 10:6, 10:9, 11:16, 11:17, 11:18, 11:20, 11:21, 12:1
**Zoobuh** [1] - 7:4